827 N.E.2d 466 (2005)
214 Ill.2d 289
292 Ill.Dec. 937
In re D.W., a Minor (The People of the State of Illinois, Appellee,
v.
Lisa M., Appellant).
In re Amanda D., a Minor (The People of the State of Illinois, Appellant,
v.
Lisa Z., Appellee).
Nos. 97292, 98896.
Supreme Court of Illinois.
March 24, 2005.
*469 Edwin A. Burnette, Public Defender, Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant in No. 97292.
Lisa Madigan, Attorney General, Springfield, Richard A. Devine, State's Attorney, Chicago (Linda Woloshin, Assistant *470 Attorney General, Chicago, Renee Goldfarb, Nancy Grauer Kisicki, Annette Collins, Assistant State's Attorneys, of counsel), for the People in No. 97292.
Patrick T. Murphy, Charles P. Golbert, Janet L. Barnes, Office of the Cook County Public Guardian, Chicago, for the minor in No. 97292.
Lisa Madigan, Attorney General, Springfield (Gary Feinerman, Solicitor General, John P. Schmidt, Assistant Attorney General, Chicago, of counsel), for the People in 98896.
Samuel S. Melei, of Coonen & Roth, Ltd., Crystal Lake, for appellee in 98896.
Justice KARMEIER delivered the opinion of the court:
At issue in these consolidated appeals is the constitutionality of section 1(D)(q) of the Adoption Act (750 ILCS 50/1(D)(q) (West 2000)). Under that section, a parent is irrefutably presumed unfit if the parent "has been criminally convicted of aggravated battery, heinous battery, or attempted murder of any child" (750 ILCS 50/1(D)(q) (West 2000)) whether or not the parent is capable of adequately caring for his or her child. In each case before us, the State sought a finding that the respondent mother was an unfit parent, proceeding solely under section 1(D)(q) of the Adoption Act; and the circuit court found the respondent unfit, based solely upon her conviction of an offense listed in that provision. In each case, parental rights were subsequently terminated after a best-interests hearing. In separate appeals, respondents challenged the constitutionality of section 1(D)(q). The First District of the appellate court upheld the constitutionality of the statute in L.M.'s appeal (In re D.W., 344 Ill.App.3d 30, 278 Ill.Dec. 692, 799 N.E.2d 410); in Lisa Z.'s case, the Second District of the appellate court held the statute unconstitutional on due process grounds (In re Amanda D., 349 Ill.App.3d 941, 285 Ill.Dec. 358, 811 N.E.2d 1237). We granted leave to appeal (177 Ill.2d R. 315) and consolidated the two cases, docketing the former as cause No. 97292 and the latter as cause No. 98896. Because we find that section 1(D)(q) violates the equal protection rights of those to whom it is applied, we affirm the judgment of the appellate court in cause No. 98896 and reverse the judgments of the appellate and circuit courts in cause No. 97292, remanding the cause to the circuit court for proceedings consistent with this opinion.
The controversy in this case involves what are really two subsections of section 1(D) of the Adoption Act which provide alternative grounds (among many) for finding a parent unfit. 750 ILCS 50/1(D)(i), (D)(q) (West 2002). These subsections are set forth below in context:
"D. `Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following, except that a person shall not be considered an unfit person for the sole reason that the person has relinquished a child in accordance with the Abandoned Newborn Infant Protection Act:
* * *
(i) Depravity. Conviction of any one of the following crimes shall create a presumption that a parent is depraved which can be overcome only by clear and convincing evidence: (1) first degree murder in violation of paragraph 1 or 2 of subsection (a) of Section 9-1 of the Criminal Code of 1961 or conviction of second degree murder in violation of subsection (a) of Section 9-2 of the Criminal Code of 1961 of a parent of the child to be adopted; (2) first degree *471 murder or second degree murder of any child in violation of the Criminal Code of 1961; (3) attempt or conspiracy to commit first degree murder or second degree murder of any child in violation of the Criminal Code of 1961; (4) solicitation to commit murder of any child, solicitation to commit murder of any child for hire, or solicitation to commit second degree murder of any child in violation of the Criminal Code of 1961; or (5) aggravated criminal sexual assault in violation of Section 12-14(b)(1) of the Criminal Code of 1961.
There is a rebuttable presumption that a parent is depraved if the parent has been criminally convicted of at least 3 felonies under the laws of this State or any other state, or under federal law, or the criminal laws of any United States territory; and at least one of these convictions took place within 5 years of the filing of the petition or motion seeking termination of parental rights.
There is a rebuttable presumption that a parent is depraved if that parent has been criminally convicted of either first or second degree murder of any person as defined in the Criminal Code of 1961 within 10 years of the filing date of the petition or motion to terminate parental rights.
* * *
(q) The parent has been criminally convicted of aggravated battery, heinous battery, or attempted murder of any child." 750 ILCS 50/1(D)(i), (D)(q) (West 2002).
The constitutional issues in this case concern the omission of any opportunity for rebuttal in section 1(D)(q), an opportunity afforded those whom the State alleges are unfit under section 1(D)(i).
The details of the proceedings below have been set forth with specificity in the appellate court's opinions. We reiterate only those facts necessary to provide a framework for our disposition. Because of the standing issue raised in cause No. 97292, our recitation of facts in that case is necessarily more comprehensive.

BACKGROUND

Cause No. 97292
In 1990, respondent, Lisa M., was convicted of the attempted murder of her infant son, D.E. Respondent was sentenced to six years' imprisonment. At that time, respondent had three children: M.E., Q.E., and D.E. The children were placed in their father's custody when respondent went to prison.
After her release from prison, respondent gave birth to D.W. on March 7, 1994. Court records indicate that the State filed a petition for adjudication of wardship of D.W. on April 3, 1995, based on respondent's prior conviction and her history of reports with the Department of Children and Family Services (DCFS) from 1987 to 1990. Following a temporary custody hearing, the State removed D.W. from respondent's home, pending an adjudicatory hearing. At the conclusion of the adjudicatory hearing, on February 16, 1996, the circuit court of Cook County found that D.W. was at substantial risk of physical injury and ordered D.W. permanently removed from respondent's custody. However, the judgment of the circuit court was reversed on appeal due to the circuit court's failure to conclude the adjudicatory hearing within the time constraints set forth in section 2-14(b) of the Juvenile Court Act of 1987 (705 ILCS 405/2-14(b) (West 1994)). In re D.W., No. 1-96-1996, 294 Ill.App.3d 1089, 242 Ill.Dec. 568, 721 N.E.2d 847 (unpublished order under Supreme Court Rule 23).
*472 Thereafter, the State filed another petition for adjudication of wardship of D.W. on April 3, 1998, alleging, under section 2-3(2)(ii) of the Juvenile Court Act (705 ILCS 405/2-3(2)(ii) (West 1996)), that D.W. was abused and faced substantial risk of physical injury. The petition referenced respondent's prior conviction and her previous contacts with DCFS. On August 28, 1998, the circuit court found that D.W. was abused or neglected under section 2-3(2)(ii) based on respondent's: (1) criminal conviction for the attempted murder of her child, D.E.; (2) five prior DCFS reports of abuse and neglect; and (3) failure to undergo recommended mental health treatment.
On September 16, 1999, the State filed a supplemental petition for appointment of a guardian with the right to consent to D.W.'s adoption. The State alleged in the petition, inter alia, that respondent: (1) failed to maintain a reasonable degree of interest, concern or responsibility as to D.W. (750 ILCS 50/1(D)(b) (West 1998)); (2) failed to make reasonable efforts to correct the conditions which were the basis for D.W.'s removal and failed to make reasonable progress toward his return (750 ILCS 50/1(D)(m) (West 1998)); and (3) had been criminally convicted of the attempted murder of a child (750 ILCS 50/1(D)(q) (West 1998)).
After an abortive attempt to arrange a related adoption, the matter proceeded to a fitness hearing on May 17, 2002. Prior to commencement of the hearing, the State requested leave "to withdraw all grounds except for Ground Q," electing to proceed only under section 1(D)(q) of the Adoption Act (750 ILCS 50/1(D)(q) (West 1998)). The court acknowledged that the State would thus "withdraw [from consideration as grounds for a finding of unfitness, statutory bases stated in subsections] B [(750 ILCS 50/1(D)(b) (West 1998))] and M [(750 ILCS 50/1(D)(m) (West 1998))]," and proceed only under section 1(D)(q). The court so advised respondent's counsel. Based upon that representation, respondent's counsel withdrew a notice to compel the minor's appearance at the fitness portion of termination proceedings. Prior to hearing testimony, the circuit court specifically stated: "The Court grants the State leave to withdraw other grounds that they have alleged in the petition and we'll go forward now with the State putting forth their evidence as to Ground Q."
The State first called respondent to testify as an adverse witness. Respondent testified that, in 1990, she had been convicted of attempting to kill her son, D.E. The State introduced both a certified copy of respondent's 1990 conviction, which stated that respondent was guilty of attempted first degree murder, and the 1990 indictment, in that case, which alleged that respondent was guilty of "intentionally and knowingly" attempting to kill D.E. Finally, the State had a prior disposition order admitted into evidence, which named respondent as the mother of D.E. The State presented no other evidence at the fitness hearing.
Respondent's counsel then called respondent as a witness and attempted to introduce evidence of respondent's rehabilitation efforts subsequent to her conviction. The State interposed repeated objections on relevancy grounds, maintaining that, under section 1(D)(q), there is no defense of rehabilitation. The State argued that, under section 1(D)(q), if there is competent evidence of a respondent's prior conviction for the attempted murder of a child, respondent is shown conclusively unfit. The trial court agreed with the State, and allowed respondent's counsel to proceed with a brief testimonial offer of proof.
Thereafter, respondent's counsel argued that the circuit court's application of section *473 1(D)(q) violated the due process and equal protection clauses of the United States and Illinois Constitutions. Counsel noted that a conviction for attempted murder of a child is a ground for a finding of unfitness under either section 1(D)(q) or section 1(D)(i) of the Adoption Act. Proof of the prior conviction is conclusive evidence of parental unfitness under the former provision, but creates only a rebuttable presumption of unfitness under the latter. Thus, counsel observed, "By putting a specific letter on a case, [the State] can change the parents' rights. * * * That violates [respondent's rights to] due process and equal protection."
The State and the public guardian argued that the court's application of section 1(D)(q) was constitutional. The State cited in support of its position an appellate court decision which has since been vacated by this court. In re J.B., 328 Ill.App.3d 175, 262 Ill.Dec. 485, 765 N.E.2d 1093 (2002), judgment vacated & appeal dismissed, 204 Ill.2d 382, 273 Ill.Dec. 827, 789 N.E.2d 1259 (2003). The appellate court in J.B. held section 1(D)(q) constitutional, affirming the circuit court's application of the statute's conclusive presumption of unfitness to a respondent who had been convicted of the aggravated battery of her child. In re J.B., 328 Ill.App.3d at 195, 262 Ill.Dec. 485, 765 N.E.2d 1093. The public guardian argued that the statute does not preclude a parent from presenting evidence as to parental rehabilitation, noting the J.B. court's observation that the parent who is conclusively deemed unfit under section 1(D)(q) can still present evidence of his or her "rehabilitation and desire and ability to be a parent" at the "best interests" hearing. In re J.B., 328 Ill.App.3d at 191, 262 Ill.Dec. 485, 765 N.E.2d 1093.
After hearing the parties' arguments, the circuit court found that respondent's case was "factually different" from J.B. in that the instant case involves a conviction (attempted murder of a child) which is addressed in two statutory sections: one containing a rebuttable presumption (section 1(D)(i)); the other omitting any opportunity for rebuttal (section 1(D)(q)). Thus, the court decided to allow rehabilitation evidence at respondent's fitness hearing, stating:
"I'm going to hear the testimony, regardless [sic] of rehabilitation. I'm going to hear [respondent's] testimony. It is just a matter of am I going to hear it at the unfitness hearing or the best interest hearing.
If I were to wait and hear it only at the best interest hearing, it is possible that the Appellate Court might see this case differently than they saw J.B. and say that is an equal protection problem. Therefore, reverse the finding. * * *
* * *
The Court, assuming the statute is constitutional, noting depravity is not alleged, has not been alleged in this case, that the only allegation of unfitness that has been acted upon or prosecuted or is being prosecuted by the State in Q is going to, despite the fact that the Appellate Court has in February upheld the constitutionality of Paragraph Q, going to allow the natural mother to offer her evidence of rehabilitation * * *."
Thus, the circuit court allowed the testimony over the relevancy objections of the State and the public guardian.
Respondent's evidence of rehabilitation consisted only of her abbreviated testimony. Respondent testified that, upon her release from prison, she "went into therapy on [her] own to seek help." For approximately three yearsfrom 1992 to 1995she attended therapy sessions at West Side Family Health Center with Dr. *474 DeePak Kapoor. Her therapy was "successfully terminated." Respondent also stated that she successfully completed her parole in 1995. Moreover, respondent testified that she attended parenting classes in 1994 at Mt. Sinai Hospital and received a certificate at the end of the 10-week program. Respondent stated she got a court-ordered psychological evaluation and a drug and alcohol assessment. She was not required to pursue any other services as a result of the drug and alcohol assessment. She claimed she wanted to participate in family counseling with her children, but she was not afforded the opportunity. Respondent stated she was working at a "temp agency" and going to school part-time.
At the conclusion of respondent's testimony, the State argued that, in order to establish unfitness under section 1(D)(q), the State was only required to prove respondent's conviction for attempted murder of a child, which was done by means of a certified copy of conviction and the respondent's own testimony. In response, respondent's counsel noted respondent's testimony and concluded: "I don't believe, Judge, they have come back with sufficient evidence to show why she should be declared unfit, just because of that conviction."
The circuit court then stated:
"The Court will rule as follows: With regard to unfitness, the Court does find that the State has met their burden of proof in this case, which is clear and convincing evidence with regard to Paragraph Q. The State has proved that [respondent] was criminal [sic] convicted of the attempted murder of a child. There is a certified copy of conviction admitted into evidence.
And [respondent] has herself testified and admitted she was convicted of that crime with regard to her child * * *.
* * *
I allowed [respondent] * * * the opportunity to testify to her rehabilitative efforts, because of the arguments made by counsel regarding the constitutionality of the statute.
It appears to me, first of all, under In re J.B. the statute is constitutional. As applied in this case, I think the Court would have been correct not to allow the testimony. But I'm considering it."
The court briefly summarized respondent's testimony and noted, even under section 1(D)(i) of the statute, the presumption of unfitness can be overcome only by clear and convincing evidence. The court continued:
"This Court does not believe that there has been clear and convincing evidence presented by [respondent] to overcome the presumption, if this case were brought under Paragraph I, depravity. Had Dr. [Kapoor] come in and testified that he counseled you for three years and that based on your progress in counseling he believes that you would not be a risk to your child, that you made sufficient progress, or it wouldn't necessarily be Dr. [Kapoor] that would have to testify. Perhaps somebody else who witnessed what you have done over the years. But all I know is you attempted to kill one of your children.

* * * I don't find that you have overcome any presumption of unfitness that's been made in this case. And that's assuming that there is a presumption that would be able to be overcome.
So, the Court is finding, so the record is clear, [respondent] unfit pursuant to Paragraph Q of the Adoption Act." (Emphases added.)
The evidence adduced by the State at the best-interests hearing is not pertinent *475 to the issue before us. That evidence is recounted at length in the appellate court's opinion. In re D.W., 344 Ill.App.3d 30, 278 Ill.Dec. 692, 799 N.E.2d 410. For present purposes, suffice it to say that the State presented substantial evidence suggesting that D.W. may have been sexually abused, that he suffered from psychological problems, and that socially unacceptable behavior he exhibited gradually improved after he was in foster care for a time. Respondent took the stand and testified that she had never sexually abused D.W., that D.W. had never "acted out" prior to being placed in a foster home, and that she "would like nothing more than to have contact with [her] son."
Based on the evidence presented at the fitness and best-interests hearings, the circuit court found respondent unfit pursuant to section 1(D)(q) and determined it was in D.W.'s best interests to terminate respondent's parental rights. Accordingly, the trial court entered an order on May 17, 2002, terminating respondent's parental rights.
On appeal, respondent argued that section 1(D)(q) of the Adoption Act (750 ILCS 50/1(D)(q) (West 1998)) creates an "irrebuttable presumption" that a parent is unfit if he or she has been convicted of the attempted murder of a child, and thus the statute violates the due process clauses of the United States and Illinois Constitutions. Specifically, respondent contended that section 1(D)(q) violates due process because it does not permit the trial court to consider such things as the passage of time since the conviction and the ability of a parent to change as a result of parenting classes and individual therapy. Respondent also argued that section 1(D)(q) of the Adoption Act violates the equal protection clause of the United States and Illinois Constitutions because it denies a parent who has been convicted of the attempted murder of a child the opportunity to rebut a presumption of unfitness, while section 1(D)(i) permits parents who have been convicted of offenses such as first degree murder, aggravated criminal sexual assault, and multiple felonies the opportunity to rebut a presumption of unfitness.
Initially, the appellate court rejected the argument of the State and the public guardian that respondent lacked standing to challenge the constitutionality of section 1(D)(q) "because the trial court granted her the very opportunity which she now claims the statute precludes, i.e., the opportunity to present evidence at the fitness hearing regarding her rehabilitation efforts and her willingness and ability to care for her children." In re D.W., 344 Ill.App.3d at 44, 278 Ill.Dec. 692, 799 N.E.2d 410. The appellate court found respondent clearly would have had standing "had the trial court properly applied section 1(D)(q)," as she would have been precluded from presenting evidence of parental rehabilitation at the fitness hearing. In re D.W., 344 Ill.App.3d at 44-45, 278 Ill.Dec. 692, 799 N.E.2d 410. The appellate court reasoned, "Because respondent was convicted of the attempted murder of a child, she is still within the class of persons as to whom the statute is allegedly unconstitutional and, as long as respondent has minor children, she is also in danger of sustaining a direct injury as a result of the proper enforcement of the statute." In re D.W., 344 Ill.App.3d at 45, 278 Ill.Dec. 692, 799 N.E.2d 410. Thus, in the appellate court's view, the circuit court's "misapplication" of the statute did not deprive respondent of standing.
On the merits, the appellate court held section 1(D)(q) violated neither principles of due process nor equal protection. After discussing three appellate court decisions that addressed the use of "`per se' factors for finding unfitness as a matter of law *476 under the Act" (In re D.W., 344 Ill.App.3d at 47-49, 278 Ill.Dec. 692, 799 N.E.2d 410), the court found that section 1(D)(q) does not violate a party's due process rights "merely because the statute requires a finding of unfitness as a matter of law based on a prior conviction." In re D.W., 344 Ill.App.3d at 49, 278 Ill.Dec. 692, 799 N.E.2d 410. The court then went on to confront "[t]he more difficult issue [of] whether amended section 1(D)(q) of the Act is sufficiently narrowly tailored to express the State's interest in protecting children from abuse," an issue made more problematicas the appellate court recognized by the existence of another subsection of the same statute that creates a rebuttable presumption of unfitness for those convicted of the same or comparable offenses. In re D.W., 344 Ill.App.3d at 49, 278 Ill.Dec. 692, 799 N.E.2d 410.
The appellate court ultimately rejected respondent's due process and equal protection challenges on two bases urged by the State and the public guardian. First, with respect to due process and equal protection, the court noted that those to whom section 1(D)(q) is applied are not totally deprived of an opportunity to present rehabilitation evidence during termination proceedings, since they may do so during the best-interests portion of the proceedings. In re D.W., 344 Ill.App.3d at 52, 55, 278 Ill.Dec. 692, 799 N.E.2d 410. Second, with respect to equal protection, the court observed that the potential consequences for a person convicted of one of the listed offenses are the same under either section 1(D)(i) or section 1(D)(q), i.e., termination of parental rights because he or she is unfit. In re D.W., 344 Ill.App.3d at 55, 278 Ill.Dec. 692, 799 N.E.2d 410. "Although, from respondent's viewpoint, section 1(D)(q) of the Act is stricter because it requires a finding of unfitness without the opportunity to rebut that finding, the potential consequences are the same under either section * * *." In re D.W., 344 Ill.App.3d at 55, 278 Ill.Dec. 692, 799 N.E.2d 410. Employing this reasoning, the appellate court upheld the constitutionality of the statute and affirmed the judgment of the circuit court.

Cause No. 98896
On March 17, 1997, respondent Lisa Z. pled guilty to a charge of aggravated battery (720 ILCS 5/12-4(a) (West 1996)). The victim of the battery was one of respondent's daughters, who is not involved in the instant case.
On December 3, 2000, Amanda D. was born. The State filed a petition for adjudication of wardship on September 3, 2002, alleging, inter alia, that Amanda D. was abused and neglected because respondent left the child with respondent's paramour for two days while she went to Chicago to use drugs; she used crack cocaine in front of Amanda D.; she suffered from depression and was not taking her prescribed medications on a regular basis; and she had yet to complete a recommended substance abuse program. On December 26, 2002, the circuit court of McHenry County found that the State had proven the allegations set forth in the petition.
On January 30, 2003, the State filed a petition for termination of parental rights. The sole allegation regarding respondent's unfitness to be a parent was that respondent previously had been convicted of aggravated battery of a child. On the same date, the State moved for summary judgment and attached to the motion a certified copy of respondent's conviction. The trial court ultimately granted the motion on February 25, 2003. Thereafter, a best-interests hearing was held, and, on November 25, 2003, the trial court terminated respondent's parental rights.
Respondent appealed, arguing, inter alia, that section 1(D)(q) of the Adoption *477 Act violates due process and equal protection guarantees of both the state and federal constitutions. The appellate court agreed that the statute denied respondent due process, and thus reversed the trial court's determination that respondent is an unfit parent, vacated the subsequent order terminating her parental rights, and remanded the cause with directions for further proceedings. In re Amanda D., 349 Ill.App.3d at 955, 285 Ill.Dec. 358, 811 N.E.2d 1237.
The appellate court noted that governmental action that impairs a fundamental rightsuch as the right to raise one's childrenmust be narrowly tailored to advance a compelling state interest. In re Amanda D., 349 Ill.App.3d at 946, 285 Ill.Dec. 358, 811 N.E.2d 1237. The court observed that a statute is "`narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy.'" In re Amanda D., 349 Ill. App.3d at 946, 285 Ill.Dec. 358, 811 N.E.2d 1237, quoting Frisby v. Schultz, 487 U.S. 474, 485, 108 S.Ct. 2495, 2503, 101 L.Ed.2d 420, 432 (1988), citing Members of the City Council v. Taxpayers for Vincent, 466 U.S. 789, 808-10, 104 S.Ct. 2118, 2130-32, 80 L.Ed.2d 772, 789-90 (1984). The statute must utilize the least restrictive means consistent with the attainment of its goal. In re Amanda D., 349 Ill.App.3d at 947, 285 Ill.Dec. 358, 811 N.E.2d 1237, quoting In re H.G., 197 Ill.2d 317, 330, 259 Ill.Dec. 1, 757 N.E.2d 864 (2001), quoting In re R.C., 195 Ill.2d 291, 303, 253 Ill.Dec. 699, 745 N.E.2d 1233 (2001).
The appellate court ultimately determined that the statute's "proxy class" (people convicted of section 1(D)(q) offenses and thus deemed per se unfit) is "broader than the class of unfit parents." Therefore, the court concluded the statute is not narrowly tailored to advance the state's "undeniably compelling" interest in the safety and welfare of children. In re Amanda D., 349 Ill.App.3d at 946, 948, 285 Ill.Dec. 358, 811 N.E.2d 1237. The court, however, noted it "is not difficult to divine" what more would be required "before section 1(D)(q) could pass constitutional muster." One need only look to another subsection of the same statute. The "rebuttable presumption" provisions of section 1(D)(i) would allow a trial court to hear additional evidence that might exclude an otherwise fit parent from section 1(D)(q)'s class of parents deemed per se unfit. The appellate court noted:
"A parent could attempt to rebut the presumption, for example, through evidence of rehabilitation, evidence that the offense occurred under unique circumstances, or the showing of the passage of time during which the parent has led an upstanding life. However, section 1(D)(q) includes no such provisions." In re Amanda D., 349 Ill.App.3d at 949, 285 Ill.Dec. 358, 811 N.E.2d 1237.
The appellate court disagreed with the reasoning of In re D.W., 344 Ill.App.3d 30, 278 Ill.Dec. 692, 799 N.E.2d 410, noting that the court in D.W. had applied the wrong standard in its due process analysis:
"Although the [D.W.] court began its analysis by stating that the statute was subject to strict scrutiny and was constitutional only if narrowly tailored to promote a compelling interest (D.W., 344 Ill.App.3d at 47, 278 Ill.Dec. 692, 799 N.E.2d 410), its analysis of the issue reads as if it utilized the deferential rational-basis standard, under which a statute is required only to bear a rational relationship to the legislature's purpose in enacting the statute (see In re D.P., 319 Ill.App.3d 554, 557, 253 Ill.Dec. 597, 745 N.E.2d 720 (2001)). Specifically, the court concluded that section 1(D)(q) survived constitutional attack because `section 1(D)(q) promotes [the *478 state's compelling interest in protecting children] by allowing courts to consider a parent's conviction for the attempted murder of a child when determining whether the parent is also fit to parent his or her other current or future children.' D.W., 344 Ill.App.3d at 49, 278 Ill.Dec. 692, 799 N.E.2d 410. That the statute promotes a state interest is not enough. Any statute that bears a rational relationship to its goal does so. What is required when a fundamental right is at issue, however, is that the statute promote the State's interest in a way that is narrowly tailored to achieving that end." In re Amanda D., 349 Ill.App.3d at 951, 285 Ill.Dec. 358, 811 N.E.2d 1237.
The appellate panel in Lisa Z.'s case concluded that section 1(D)(q) was not narrowly tailored in that the statute did not utilize the least restrictive means consistent with the attainment of its goal. Thus, the court found section 1(D)(q) unconstitutional in that it violated principles of due process. Given that holding, the court found it unnecessary to address Lisa Z.'s other issues.
Consequently, we are confronted with conflicting appellate court decisions regarding the constitutionality of section 1(D)(q), the provision upon which a finding of unfitness was premised in each case, and arguments that section 1(D)(q) violates constitutional guarantees of due process and equal protection.

ANALYSIS
As a threshold matter, the State argues that Lisa M. lacks standing to challenge the constitutionality of section 1(D)(q) because she was allowed to testify regarding her efforts to achieve parental rehabilitation. As previously stated, section1(D)(q) the provision under which the State elected to proceedcontains a mandatory conclusive presumption of parental unfitness upon clear and convincing proof of conviction. No rehabilitative evidence is permitted under the statutory procedure. A confluence of rather unusual circumstances compels us to reject the State's standing argument.
First, we are not convinced that the hearing which took place was of the caliber respondent would have received but for the trial court's vacillation. The State's election to proceed only under section 1 (D)(q) obviously narrowed the focus of the hearing to, essentially, proof of respondent's prior conviction. In view of the State's representation, respondent's counsel withdrew a notice to compel the minor's appearance at the fitness portion of termination proceedings, and, when the circuit court reversed itself and decided to hear evidence of rehabilitation, counsel called only respondent as a witness. While this was, of course, counsel's decision, it is not clear from the record the extent to which the procedure was affected by the uncertainty exhibited by the trial court.
Second, the words and actions of the circuit court inspire little confidence that respondent actually received due consideration of the testimony that was presented. The circuit court's decision to reverse its initial ruling and hear evidence of rehabilitation seems to have been prompted, in part, by a fear that the appellate court might see things differently, and by a belief that the court could simply ignore the procedural aspects of section 1(D)(q) and hedge its rulings. We note the following statements:
"It is just a matter of am I going to hear [evidence of rehabilitative efforts] at the unfitness hearing or the best interest hearing.
If I were to wait and hear it only at the best interest hearing, it is possible *479 that the Appellate Court might see this case differently than they saw J.B. and say that is an equal protection problem. Therefore, reverse the finding. * * *
* * *
The Court, assuming the statute is constitutional, noting depravity is not alleged, has not been alleged in this case, that the only allegation of unfitness that has been acted upon or prosecuted or is being prosecuted by the State in Q is going to, despite the fact that the Appellate Court has in February upheld the constitutionality of Paragraph Q, going to allow the natural mother to offer her evidence of rehabilitation * * *."
The court obviously recognized only section 1(D)(i) (depravity) would have provided the statutory authority to hear evidence of rehabilitation during the fitness phase of termination proceedings, and that section 1(D)(q) clearly did not; yet, though the court found section 1(D)(q) to be constitutional, the court chose to proceed in a manner contravening one key procedural aspect of the statute. The court could not do so, logically or procedurally, without finding section 1(D)(q) unconstitutional.
Though the court permitted and purportedly considered respondent's evidence, the court repeatedly and unequivocally stated that its ruling, finding respondent unfit, was based solely on section 1(D)(q):
"The Court will rule as follows: With regard to unfitness, the Court does find that the State has met their burden of proof in this case, which is clear and convincing evidence with regard to Paragraph Q. The State has proved that [respondent] was criminal [sic] convicted of the attempted murder of a child. There is a certified copy of conviction admitted into evidence.
And [respondent] has herself testified and admitted she was convicted of that crime with regard to her child * * *."
The court recounted respondent's testimony in a rather cursory manner and concluded, speaking to respondent, "[A]ll I know is you attempted to kill one of your children." Lest there be any doubt about the basis of its finding, the court added, yet again: "So, the Court is finding, so the record is clear, [respondent] unfit pursuant to Paragraph Q of the Adoption Act."
By enacting section 1(D)(q), the legislature obviously did not intend to provide for or allow the introduction of evidence to rebut the statute's conclusive presumption of unfitness. Indeed, if there were any lingering doubts, they would be put to rest by a comparison of the clear language of section 1(D)(i) (specifically providing for rebuttal) and section 1(D)(q) (omitting any such reference), and by application of the familiar maxim expressio unius est exclusio alterius, meaning, "to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 620 (8th ed.2004). This court recently employed that maxim in an analogous situation, holding, where the legislature has expressly provided a private right of action in a specific section of a statute, the legislature did not intend to imply private rights of action to enforce other sections of the same statute. Metzger v. DaRosa, 209 Ill.2d 30, 44, 282 Ill.Dec. 148, 805 N.E.2d 1165 (2004). By specifically providing an opportunity for rebuttal evidence in section 1(D)(i), the legislature did not intend to imply a right of rebuttal in section 1(D)(q). The circuit court's actions and words indicate the court was well aware of the differing procedural aspects of the two sections, one of which (section 1(D)(i)) was not even alleged as a ground for unfitness in the State's petition.
*480 As this court has previously stated, it is improper to terminate a parent's rights on grounds not alleged in a petition to terminate. In re D.C., 209 Ill.2d 287, 296, 282 Ill.Dec. 848, 807 N.E.2d 472 (2004). It has been held that a determination of unfitness may be made only upon consideration of evidence relevant to the grounds alleged in the petition before the court. In re V.S., 285 Ill.App.3d 372, 375, 220 Ill.Dec. 894, 674 N.E.2d 437 (1996), citing In re Adoption of Syck, 138 Ill.2d 255, 277, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990) (trial court is to determine parental unfitness based on evidence relevant to the "particular grounds of unfitness alleged"). Evidence of parental rehabilitation was not relevant to the statutory ground before the court.
The constitutional source of a circuit court's jurisdiction does not carry with it a license to act in ways inconsistent with controlling statutory law. In re Lawrence M., 172 Ill.2d 523, 529, 219 Ill.Dec. 32, 670 N.E.2d 710 (1996), citing In re M.M., 156 Ill.2d 53, 75, 189 Ill.Dec. 1, 619 N.E.2d 702 (1993) (Miller, C.J., concurring, joined by Bilandic, J.). For example, in People v. Thompson, 209 Ill.2d 19, 23, 282 Ill.Dec. 183, 805 N.E.2d 1200 (2004), this court held that a circuit court disposition not authorized by statute is void. See also In re Austin W., 214 Ill.2d 31, 56, 59, 291 Ill.Dec. 280, 823 N.E.2d 572 (2005) (this court noted the circuit court's "serious error," where the circuit court knew it had "no authority" to review an administrative law judge's determination, but did so anyway). In this case, the circuit court lacked the statutory authorization to consider respondent's evidence of rehabilitation, and thus could not have rendered a valid judgment on her behalf based on that evidence. The circuit court had the authority to make a finding, and render judgment, based solely on the sufficiency of proof that the parent had been convicted of one of the offenses listed in section 1(D)(q). It simply had no authority to choose a statutory ground for unfitness not alleged in the petition and proceed under that section.
Given the coalescence of the aforementioned circumstances, we believe Lisa M. has standing to challenge the constitutionality of section 1(D)(q) of the Adoption Act. We now turn to the standards that govern our review.
An issue concerning the constitutionality of a statute presents a question of law that we review de novo. In re Parentage of John M., 212 Ill.2d 253, 265, 288 Ill.Dec. 142, 817 N.E.2d 500 (2004); Village of Lake Villa v. Stokovich, 211 Ill.2d 106, 121-22, 284 Ill.Dec. 360, 810 N.E.2d 13 (2004). We begin with the presumption that the statute is constitutional. John M., 212 Ill.2d at 265, 288 Ill.Dec. 142, 817 N.E.2d 500. If reasonably possible, this court must construe the statute so as to affirm its constitutionality and validity. In re R.C., 195 Ill.2d at 296, 253 Ill.Dec. 699, 745 N.E.2d 1233.
When confronted with a claim that a statute violates constitutional guarantees of due process or equal protection, a court must first determine the nature of the right purportedly infringed by the statute. People v. Cornelius, 213 Ill.2d 178, 203, 290 Ill.Dec. 237, 821 N.E.2d 288 (2004); In re R.C., 195 Ill.2d at 302, 253 Ill.Dec. 699, 745 N.E.2d 1233. Classification of the right affected is critical because the nature of the right dictates the level of scrutiny courts employ in determining whether the statute in question passes constitutional muster. Unless a fundamental constitutional right is implicated, the rational basis test applies, and the statute will be upheld so long as it bears a rational relationship to a legitimate state interest. John M., 212 Ill.2d at 266, 288 Ill.Dec. 142, *481 817 N.E.2d 500, quoting In re R.C., 195 Ill.2d at 302, 253 Ill.Dec. 699, 745 N.E.2d 1233. However, where the constitutional right at issue is one considered "fundamental," the presumption of constitutionality is weaker, and courts must subject the statute to the more rigorous requirements of strict scrutiny analysis. Cornelius, 213 Ill.2d at 204, 290 Ill.Dec. 237, 821 N.E.2d 288; Stokovich, 211 Ill.2d at 122, 284 Ill. Dec. 360, 810 N.E.2d 13. In order to survive strict scrutiny, the measures employed by the legislature must be necessary to serve a compelling state interest, and must be narrowly tailored thereto, i.e., the legislature must use the least restrictive means consistent with the attainment of its goal. In re H.G., 197 Ill.2d at 330, 259 Ill.Dec. 1, 757 N.E.2d 864; In re R.C., 195 Ill.2d at 303, 253 Ill.Dec. 699, 745 N.E.2d 1233.
There is no doubt that the right of parents to control the upbringing of their children is a fundamental constitutional right. In re R.C., 195 Ill.2d at 303, 253 Ill.Dec. 699, 745 N.E.2d 1233. Indeed, the rights to conceive and raise one's children have been described as among the most "`basic civil rights of man.'" Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972), quoting Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942). As the Supreme Court observed in Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 56 (2000), "[t]he liberty interest at issue in this case-the interest of parents in the care, custody, and control of their children-is perhaps the oldest of the fundamental liberty interests" recognized by the Court. "`[T]he Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition.'" Michael H. v. Gerald D., 491 U.S. 110, 123-24, 109 S.Ct. 2333, 2342, 105 L.Ed.2d 91, 106 (1989), quoting Moore v. City of East Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531, 540 (1977). The liberty interest of parents in the care, custody and management of their child "`does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.'" In re D.T., 212 Ill.2d 347, 359, 289 Ill.Dec. 11, 818 N.E.2d 1214 (2004), quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-95, 71 L.Ed.2d 599, 606 (1982). Clearly, strict scrutiny analysis applies to statuteslike the one at issuethat are employed as part of a procedure to terminate parental rights and dissolve the bonds between parent and child. Thus, the statute at issue must be necessary to serve a compelling state interest and must be narrowly tailored so as to use the least restrictive means consistent with the attainment of the government's goal. In re H.G., 197 Ill.2d at 330, 259 Ill.Dec. 1, 757 N.E.2d 864; In re R.C., 195 Ill.2d at 303, 253 Ill.Dec. 699, 745 N.E.2d 1233.
With these precepts in mind, we consider the means the legislature has chosen in pursuit of what is undeniably the state's compelling interest in the safety and welfare of children. See American Federation of State, County & Municipal Employees v. Department of Central Management Services, 173 Ill.2d 299, 312, 219 Ill.Dec. 501, 671 N.E.2d 668 (1996).
While section 1(D)(q) of the Adoption Act denies respondents like Lisa M. and Lisa Z. an opportunity to rebut its presumption of parental unfitness, based upon conviction of one of the offenses listed therein, section 1(D)(i) of the Act allows for rebuttal, though several of the criminal offenses set forth therein are at least as serious as section 1(D)(q) offenses, and in some instances more serious. For example, *482 section 1(D)(q) lists "aggravated battery, heinous battery, or attempted murder of any child." 750 ILCS 50/1(D)(q) (West 2002). Among the offenses against children listed in section 1(D)(i) are "first degree murder or second degree murder of any child * * *[,] attempt or conspiracy to commit first degree murder or second degree murder of any child * * *[,] solicitation to commit murder of any child, solicitation to commit murder of any child for hire, or solicitation to commit second degree murder of any child * * *[,] aggravated criminal sexual assault." 750 ILCS 50/1(D)(i) (West 2000).
So, there is a rebuttable presumption that a person who murders a child is an unfit parent; however, there is a mandatory conclusive (irrebuttable) presumption that a parent convicted of aggravated battery or attempted murder of a childoffenses no more serious than murderis an unfit parent. Had the State alleged conviction of attempted murder of a child under section 1(D)(i), Lisa M. would have had an opportunity to rebut the presumption of unfitness; however, because the State alleged conviction of attempted murder of a child under section 1(D)(q), Lisa M. was statutorily denied the right to offer evidence in rebuttal. Lisa Z. would have had an opportunity to offer rebuttal evidence of parental fitness at the fitness hearing had she been convicted of killing one of her children, because the State would have been forced to file under section 1(D)(i); however, since she had been convicted of aggravated battery, she had no statutory right of rebuttal. There is no logic to this statutory scheme, much less the use of "narrowly tailored * * * `* * * least restrictive means consistent with the attainment of [the State's] goal.'" In re H.G., 197 Ill.2d at 330, 259 Ill.Dec. 1, 757 N.E.2d 864, quoting In re R.C., 195 Ill.2d at 303, 253 Ill.Dec. 699, 745 N.E.2d 1233.
As this court has observed, statutory classifications that affect a fundamental right violate the equal protection clause unless they are narrowly tailored to serve a compelling state interest. In re Adoption of L.T.M., 214 Ill.2d 60, 75, 291 Ill.Dec. 645, 824 N.E.2d 221 (2005); In re R.C., 195 Ill.2d at 309, 253 Ill.Dec. 699, 745 N.E.2d 1233. The constitutional guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner. L.T.M., 214 Ill.2d at 74, 291 Ill.Dec. 645, 824 N.E.2d 221, quoting In re R.C., 195 Ill.2d 291, 309, 253 Ill.Dec. 699, 745 N.E.2d 1233 (2001). In L.T.M., this court held it was a violation of equal protection not to provide appellate counsel to an indigent parent whose parental rights had been terminated under the Adoption Act, "when he certainly would have had [a right to counsel on appeal had his rights been terminated] under the Juvenile Court Act." L.T.M., 214 Ill.2d at 75, 291 Ill.Dec. 645, 824 N.E.2d 221. Thus, this court held it was an equal protection violation to accord a procedural right under one act, but to withhold it under the other. As this court noted, the consequences under either act were the same:
"[A] parent who stands to lose his rights under the Adoption Act if he is found unfit is in a very similar situation to a parent who stands to lose the very same constitutional right, based on the very same finding, in proceedings under the Juvenile Court Act." L.T.M., 214 Ill.2d at 76, 291 Ill.Dec. 645, 824 N.E.2d 221.
In L.T.M., this court defined the pertinent classification for purposes of equal protection analysis as follows:
"In this case, the classification is the distinction between parents who must answer a petition to terminate their parental rights under the Juvenile Court Act and those, like John, who must answer *483 under the Adoption Act." L.T.M., 214 Ill.2d at 75, 291 Ill.Dec. 645, 214 N.E.2d 221.
The right to counsel is a procedural safeguard (In re D.T., 212 Ill.2d at 365, 289 Ill.Dec. 11, 818 N.E.2d 1214; see In re Evelyn S., 337 Ill.App.3d 1096, 1107, 273 Ill.Dec. 1, 788 N.E.2d 310 (2003)) that this court held should be afforded to similarly situated parents, facing the prospect of termination, regardless of the provision under which the State proceeded. L.T.M., 214 Ill.2d at 73-77, 291 Ill.Dec. 645, 824 N.E.2d 221.
The applicability of L.T.M.'s holding to the case at bar is unmistakable; the reasoning of L.T.M. is even more compelling when applied to the circumstances of this case. This court has stated that a rebuttable presumption is a rule of procedure. First National Bank of Chicago v. King, 165 Ill.2d 533, 542, 209 Ill.Dec. 199, 651 N.E.2d 127 (1995). Thus, a respondent, like Lisa M., who is the subject of a petition alleging unfitness under section 1(D)(q) is denied the procedural right of rebuttal that is afforded to a person convicted of the same offense, but alleged to be unfit under section 1(D)(i). The offense is the same. The potential consequences are the same. The procedural safeguards provided by the statutes are different, for no apparent reason. To deny this safeguard to Lisa M. and Lisa Z., while providing it to others similarly situated is to deny them equal protection of the law.
It is no answer to suggest that there is a unique "moral" element to section 1(D)(i) simply because that provision is entitled "depravity." There is no difference between the two sections, much less a meaningful one. Sections 1(D)(i) and 1(D)(q) both base their presumptions of parental unfitness on prior convictions of the same or similar, specified offenses. Section 1(D)(i) contains the error-reducing safeguard of rebuttal; section 1(D)(q) does not.
Moreover, notwithstanding any previous statements to the contrary, we believe, after our decision in In re D.T., there is little force left in the argument that a respondent who has been deprived of the opportunity to present evidence of parental fitness at a hearing purporting to address that very issue is no worse off for having to present such evidence at the best-interests hearing, after having been found unfit.
Recently, in In re D.T., this court held that parents are not entitled to all of the same procedural safeguards at the best-interests hearing that they enjoy at the fitness hearing. Specifically, this court found that the clear and convincing standard of proof that applies at the fitness hearing gives way to a lesser, preponderance, standard of proof at the best-interests phase of termination proceedings. In re D.T., 212 Ill.2d at 361, 366, 289 Ill.Dec. 11, 818 N.E.2d 1214. The basis for the change in standards of proof, this court noted, is a different focus at the best-interests hearing:
"Following a finding of unfitness * * * the focus shifts to the child. The issue is no longer whether parental rights can be terminated; the issue is whether, in light of the child's needs, parental rights should be terminated. Accordingly, at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." (Emphases in original.) In re D.T., 212 Ill.2d at 364, 289 Ill.Dec. 11, 818 N.E.2d 1214.
This court explained why a higher standard of proof is required at the fitness hearing and a lesser standard of proof is permissible at the best-interests phase:

*484 "At the unfitness stage, the interests of the parent and the child coincide to the extent that they both `share a vital interest in preventing erroneous termination of their natural relationship.' Santosky, 455 U.S. at 760-61, 102 S.Ct. at 1398, 71 L.Ed.2d at 611. The alignment of these interests at the unfitness hearing favors the use of error-reducing procedures, i.e., use of a more stringent burden of proof than a preponderance. See Santosky, 455 U.S. at 760-61, 102 S.Ct. at 1398, 71 L.Ed.2d at 611. The same, however, is not true at the best-interests hearing. Once the State proves parental unfitness, the interests of the parent and the child diverge. Santosky, 455 U.S. at 760, 102 S.Ct. at 1398, 71 L.Ed.2d at 611. Thus, at a best-interests hearing, the parent and the child may become adversaries, as the child's interest in a loving, stable and safe home environment becomes more aligned with the State's interest in terminating parental rights and freeing the child for adoption. Although the parent still possesses an interest in maintaining the parent-child relationship, the force of that interest is lessened by the court's finding that the parent is unfit to raise his or her child." In re D.T., 212 Ill.2d at 363-64, 289 Ill.Dec. 11, 818 N.E.2d 1214.
Clearly, a parent found unfit at the first phase of termination proceedings enters the second phase at a disadvantage from a procedural and evidentiary standpoint. See In re C.W., 199 Ill.2d 198, 217, 262 Ill.Dec. 802, 766 N.E.2d 1105 (2002) (at the best-interests hearing, the "full range of the parent's conduct" must be considered, including the grounds for finding the parent unfit); In re D.L., 326 Ill.App.3d 262, 271, 260 Ill.Dec. 125, 760 N.E.2d 542 (2001) (such evidence is a "crucial consideration" at the best-interests hearing).
A parent who is denied the opportunity to adduce evidence of fitness at the hearing where a fitness determination will be made is clearly at a disadvantage by the time of the best-interests hearinga disadvantage not faced by those who are allowed to present evidence of their fitness at the first phase of termination proceedings. The latter are accorded an "error-reducing" procedure that is inexplicably denied the former. To suggest that this inequity does not exist is to ignore the reality of results, and a fundamental requirement of due process, i.e., that a respondent be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. See Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976); In re Robert S., 213 Ill.2d 30, 49, 289 Ill.Dec. 648, 820 N.E.2d 424 (2004). The operative term here is "meaningful."
As the Supreme Court stated in Stanley, addressing another mandatory conclusive (irrebuttable) presumption, that also impacted the fundamental family relationship between parent and child:
"Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care * * * it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand." Stanley, 405 U.S. at 656-57, 92 S.Ct. at 1215, 31 L.Ed.2d at 562.
In L.T.M., we rejected any suggestion that controlling expenditures was a valid basis for denying equal protection to the class affected by the deprivation. L.T.M., 214 Ill.2d at 75-77, 291 Ill.Dec. 645, 824 N.E.2d 221. We do so here as well. If the argument is that the respondents can present their evidence of fitness in any event at the best-interests hearing, it *485 makes no difference from the standpoint of cost if they are allowed to do so at the first stage of termination proceedings; however, it may well make a significant difference as to outcome.
In short, there is no rational basis for treating persons subject to fitness proceedings under section 1(D)(q) differently from those facing the same proceedings under section 1(D)(i), much less a justification that would survive strict scrutiny. We need not speculate as to how section 1(D)(q) could be more narrowly tailored; the legislature has provided us the model in section 1(D)(i). Therefore, we hold section 1(D)(q) unconstitutional as violative of equal protection. Given our disposition, we need not address the parties' due process arguments.
It remains for us to decide whether the remedy for this constitutional violation is to require the state to extend the benefit of timely and meaningful rebuttal to those who have been denied it under section 1(D)(q), or to withdraw the benefit from those who have been favored under section 1(D)(i). See L.T.M., 214 Ill.2d at 77, 291 Ill.Dec. 645, 824 N.E.2d 221. Given that the legislature has seen fit to extend the benefit of rebuttal to those parents who have been convicted of murdering a child, we see no reason to withhold that benefit from those convicted of the lesser offenses listed in section 1(D)(q). We believe a full and fair hearing, and an informed decision, benefits all concerned, and works to the disadvantage of no one.
For the reasons stated, we affirm the judgment of the appellate court in cause No. 98896. We reverse the judgments of the appellate and circuit courts in cause No. 97292 and remand to the circuit court for further proceedings.
No. 98896Appellate court judgment affirmed.
No. 97292Judgments reversed; cause remanded.