*In re* AMANDA D., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Lisa Z., Respondent-Appellant).

Second District    No. 2—03—1360

Opinion filed June 24, 2004.

Samuel S. Melei, of Coonen & Roth, Ltd., of Crystal Lake, for appellant.

Gary W. Pack, State's Attorney, of Woodstock (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Stephanie Hoit Lee, of Algonquin, for the People.

JUSTICE GROMETER delivered the opinion of the court
Respondent, Lisa Z., appeals a series of orders of the circuit court of McHenry County declaring her an unfit parent and determining that it was in the best interests of her child, Amanda D., that her parental rights be terminated. The sole basis of the finding of unfitness was that respondent was previously convicted of aggravated battery of a child, as specified in section 1(D)(q) of the Adoption Act (Act) (750 ILCS 50/1(D)(q) (West 2002)). Because we hold section 1(D)(q) of

the Act unconstitutional, we reverse the finding of unfitness and vacate the trial court's order terminating respondent's parental rights, as it was not preceded by a valid finding of unfitness (see *In re J.W.*, 187 Ill. App. 3d 988, 999 (1989) ("A finding of unfitness is a prerequisite to addressing the question of the child's best interest")). We remand this cause for further proceedings consistent with the views expressed herein.

## BACKGROUND

On March 17, 1997, respondent pleaded guilty to a charge of aggravated battery (720 ILCS 5/12—4(a) (West 1996)). The victim of the battery was one of respondent's daughters, who is not involved in the instant case. According to the indictment in that case, respondent "knowingly caused great bodily harm to [her daughter], in that she fractured her arm."

On December 3, 2000, Amanda was born. The State filed a petition for adjudication of wardship on September 3, 2002, alleging, *inter alia*, that Amanda was abused and neglected because respondent left the child with respondent's paramour for two days while she went to Chicago to use drugs; she used crack cocaine in front of Amanda; she suffered from depression and was not taking her prescribed medications on a regular basis; and she had yet to complete a recommended substance abuse program. On December 26, 2002, the trial court found that the State had proven the allegations set forth in the petition.

On January 30, 2003, the State filed a petition for termination of parental rights. The sole allegation regarding respondent's unfitness to be a parent was that respondent previously had been convicted of aggravated battery to a child. On the same date, the State moved for summary judgment and attached to the motion a certified copy of respondent's conviction. The trial court granted the motion on February 25, 2003. Subsequently, a best-interests hearing was held, and, on November 25, 2003, the trial court terminated respondent's parental rights. Respondent now appeals.

## ANALYSIS

Respondent raises a number of issues on appeal, attacking section 1(D)(q) of the Act (750 ILCS 50/1(D)(q) (West 2002)), as well as certain aspects of the proceedings and the trial court's ultimate decision. As to section 1(D)(q), she argues that it violates the due process and equal protection guarantees of both the state and federal constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. We hold that section 1(D)(q) denies respondent due process, and we therefore need not address her other arguments.

Statutes are presumed constitutional. *Vuagniaux v. Department of*

*Professional Regulation*, 208 Ill. 2d 173, 193 (2003). The party challenging the statute bears the burden of establishing its invalidity. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 123 (1998). If reasonably possible, a court must affirm the statute's validity. *People v. Jeffries*, 164 Ill. 2d 104, 111 (1995). The constitutionality of a statute is a question of law, subject to *de novo* review. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 420 (1996).

■ Respondent contends that section 1(D)(q) denies her due process. The statute states, in pertinent part:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following, except that a person shall not be considered an unfit person for the sole reason that the person has relinquished a child in accordance with the Abandoned Newborn Infant Protection Act:
>
> * * *
>
> (q) The parent has been criminally convicted of aggravated battery, heinous battery, or attempted murder of any child." 750 ILCS 50/1(D)(q) (West 2002).

Respondent contends that section 1(D)(q) is unconstitutional in that it mandates a finding of unfitness based on the sole fact that she was convicted of aggravated battery to a child and it does not allow for the introduction of evidence of fitness, rehabilitation, or change in circumstance.

Respondent's analysis of the due process issue mixes elements of both substantive and procedural due process. She cites *In re M.H.*, 196 Ill. 2d 356 (2001), for the proposition that a parent's interest in raising his or her children is entitled to heightened protection. Thus, she argues that section 1(D)(q) must be narrowly tailored to advance a compelling state interest. These are hallmarks of a substantive due process analysis. See, *e.g.*, *Reno v. Flores*, 507 U.S. 292, 301-02, 123 L. Ed. 2d 1, 16, 113 S. Ct. 1439, 1447 (1993). However, respondent later cites *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976), the seminal case in which the Supreme Court set forth the test for determining whether state action comports with procedural due process, and argues that section 1(D)(q) fails to satisfy the second prong of *Mathews*.

Respondent's confusion is understandable. The issues are sometimes intermingled in case law. See, *e.g.*, *In re J.B.*, 328 Ill. App. 3d 175, 187-91 (2002) (citing *Mathews*, discussing substantive due process, and concluding that the procedures set forth in the Act are not unconstitutional), *vacated*, *In re J.B.*, 204 Ill. 2d 382 (2003).

Moreover, cases have discussed section 1(D)(q) in terms of an irrebuttable presumption, which suggests that a procedural analysis is appropriate. See, *e.g.*, *In re D.W.*, 344 Ill. App. 3d 30, 35 (2003); *J.B.*, 328 Ill. App. 3d at 186; *In re O.R.*, 328 Ill. App. 3d 955, 962 (2002).

■ Strictly speaking, an irrebuttable presumption is not a presumption at all. Rather, it simply establishes a relationship between a set of facts and a legal result. *In re Ray*, 88 Ill. App. 3d 1010, 1014 (1980). If, for example, one intentionally causes harmful or offensive contact with another, one commits a tort and is liable (*Smith v. Moran*, 43 Ill. App. 2d 373, 376 (1963)); one is not simply presumed a tortfeasor. Similarly, if one has been convicted of certain offenses listed in section 1(D)(q) of the Act, one is, according to the statute, an unfit parent. See 750 ILCS 50/1(D)(q) (West 2002). In a case involving a purported presumption of paternity that a biological father could not rebut under California law, the United States Supreme Court found misguided the biological father's argument that the statutory scheme did not comport with procedural due process, explaining:

"We believe this claim derives from a fundamental misconception of the nature of the California statute. While § 621 is phrased in terms of a presumption, that rule of evidence is the implementation of a substantive rule of law. California declares it to be, except in limited circumstances, irrelevant for paternity purposes whether a child conceived during, and born into, an existing marriage was begotten by someone other than the husband and had a prior relationship with him. As the Court of Appeal phrased it:

' "The conclusive presumption is actually a substantive rule of law based upon a determination by the Legislature as a matter of overriding social policy, that given a certain relationship between the husband and wife, the husband is to be held responsible for the child, and that the integrity of the family unit should not be impugned." ' 191 Cal. App. 3d, at 1005, 236 Cal. Rptr., at 816, quoting *Vincent B. v. Joan R.*, [126 Cal. App. 3d,] at 623, 179 Cal. Rptr., at 10.

Of course the conclusive presumption not only expresses the State's substantive policy but also furthers it, excluding inquiries into the child's paternity that would be destructive of family integrity and privacy." *Michael H. v. Gerald D.*, 491 U.S. 110, 119-20, 105 L. Ed. 2d 91, 103-04, 109 S. Ct. 2333, 2340 (1989).

Similarly, the only thing relevant pursuant to section 1(D)(q) is a parent's conviction of one of the offenses specified in the statute. It makes other evidence regarding the parent's fitness or rehabilitation immaterial. One may term it an "irrebuttable presumption," but the same can be said of any rule of law that dictates an outcome from a certain set of facts. See Note, *The Irrebuttable Presumption Doctrine*

*in the Supreme Court*, 87 Harv. L. Rev. 1534, 1549 (1974) ("Once a court determines the purpose toward which a classification is directed, it can always rephrase the statute as an irrebuttable presumption").

■ Respondent's challenge is therefore not procedural. She could have introduced a plethora of evidence regarding her fitness, and the trial court still would have been compelled to find her unfit pursuant to section 1(D)(q). Thus, procedure is beside the point. See *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 4, 155 L. Ed. 2d 98, 103, 123 S. Ct. 1160, 1163 (2003) (holding that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme"). What is relevant is whether a conviction of aggravated battery to a child (or one of the other offenses listed in section 1(D)(q)) is sufficient, in itself, to warrant state action that severs the parent-child relationship. This issue raises substantive due process concerns.

■ Substantive due process limits what the government may do. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 140 L. Ed. 2d 1043, 1057, 118 S. Ct. 1708, 1716 (1998). It protects certain fundamental rights that are deeply rooted in our nation's history and traditions. See *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 138 L. Ed. 2d 772, 787, 117 S. Ct. 2258, 2268 (1997). One of the most fundamental of those rights is the right to raise one's children. *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 519, 98 S. Ct. 549, 554-55 (1978); *Wisconsin v. Yoder*, 406 U.S. 205, 231-32, 32 L. Ed. 2d 15, 34, 92 S. Ct. 1526, 1541 (1972); *In re D.C.*, 209 Ill. 2d 287, 295 (2004). When a fundamental right is at issue, governmental action that impairs the right must be narrowly tailored to advance a compelling state interest. *Washington*, 521 U.S. at 721, 138 L. Ed. 2d at 788, 117 S. Ct. at 2268 (1997); *Reno*, 507 U.S. at 301-02, 123 L. Ed. 2d at 16, 113 S. Ct. at 1447 (Due process includes "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest" (emphasis in original)).

The State's interest in the safety and welfare of children is undeniably compelling. See *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 311-12 (1996). The sole issue in dispute is whether section 1(D)(q) is narrowly tailored to advance this interest. The Supreme Court has held that "[a] statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby v. Schultz*, 487 U.S. 474, 485, 101 L. Ed. 2d 420, 432, 108 S. Ct. 2495, 2503 (1988), citing *Members of the City Council v.*

*Taxpayers for Vincent*, 466 U.S. 789, 808-10, 80 L. Ed. 2d 772, 789-90, 104 S. Ct. 2118, 2130-32 (1984). It must utilize " 'the least restrictive means consistent with the attainment of its goal.' " *In re H.G.*, 197 Ill. 2d 317, 330 (2001), quoting *In re R.C.*, 195 Ill. 2d 291, 303 (2001).

When the legislature enacted section 1(D)(q) of the Act, it identified a class of individuals (those convicted of certain offenses) and determined that they fell within the class of unfit parents. In other words, a conviction of a certain offense, such as aggravated battery to a child, serves as a proxy for unfitness. Cases like this "must ultimately be analyzed as calling into question *** the adequacy of the 'fit' between the classification and the policy that the classification serves." *Michael H.*, 491 U.S. at 121, 105 L. Ed. 2d at 104, 109 S. Ct. at 2341; see also *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 652-53, 39 L. Ed. 2d 52, 67, 94 S. Ct. 791, 802 (1974) (Powell, J., concurring) ("The constitutional difficulty is not that the boards attempted to deal with this problem by classification. Rather, it is that the boards chose irrational classifications"). In the instant case, then, the issue becomes whether a conviction of aggravated battery to a child is an adequate proxy for parental unfitness or, phrased differently, whether every member of the class of people who have such a conviction is a member of the class of unfit parents.

■ We conclude that a conviction of aggravated battery to a child is not an adequate proxy for unfitness. It fails to take into account several things relevant to the ultimate fitness determination. For example, it makes no room for the consideration of things such as the passage of time without a similar incident, the circumstances of the crime, or the parent's rehabilitative efforts. Such factors are of obvious relevance. See *In re J'America B.*, 346 Ill. App. 3d 1034, 1047-48 (2004) (recognizing relevance of fact that some of the conduct forming the basis of the unfitness finding occurred 8 years earlier, when the respondent was 10 years of age, though noting that this fact did not necessarily weigh in her favor); *In re Sanders*, 77 Ill. App. 3d 78, 83 (1979) (upholding trial court's finding that parent was not unfit where, though she had a drinking problem, she was attempting to control it). In *In re J.J.*, 201 Ill. 2d 236, 250 (2002), our supreme court noted that, although the respondent had been diagnosed as alcohol dependent, her condition thereafter improved significantly, and the court held, "A stale diagnosis of alcohol dependency such as this one cannot support a termination petition." See also *In re D.M.*, 298 Ill. App. 3d 574, 581 (1998) (parent's reported abstinence from drugs during two periods was relevant, although insufficient, to rebut finding of unfitness). In *In re S.W.*, 315 Ill. App. 3d 1153, 1158 (2000), the court recognized that the respondent's youth and the fact that he was attempting

rehabilitation while in prison weighed against a finding, based on a murder he committed, that he was depraved and thus unfit. Similarly, in *In re M.B.C.*, 125 Ill. App. 3d 512, 516 (1984), the court noted the absence of "significant evidence to show [the respondent's] rehabilitation," where the respondent stood convicted of numerous felonies. Thus, such evidence is regularly considered in assessing whether a parent is unfit. In fact, in other portions of section 1(D) of the Act, the legislature has recognized its relevance. Section 1(D)(i) allows a respondent to introduce evidence of fitness where the respondent has been convicted of first- or second-degree murder. 750 ILCS 50/1(D)(i) (West 2002). Moreover, such a conviction is considered relevant only for 10 years from the date of conviction. 750 ILCS 50/1(D)(i) (West 2002).

If alcoholics, drug addicts, murderers and other felons can change, we see no reason why someone who has, sometime in the past, been convicted of aggravated battery of a child cannot do the same and be considered a fit parent. In fact, given that individuals with the above-enumerated problems have changed, it is likely that there are people who have been convicted of the offenses set forth in section 1(D)(q) of the Act who have changed as well. As such, the proxy class (people convicted of section 1(D)(q) offenses) is certainly broader than the class of unfit parents. It is therefore not narrowly tailored. See *Frisby*, 487 U.S. at 485, 101 L. Ed. 2d at 432, 108 S. Ct. at 2503; see also *Vlandis v. Kline*, 412 U.S. 441, 446, 37 L. Ed. 2d 63, 68, 93 S. Ct. 2230, 2233 (1973) ("[P]ermanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments").

The present case provides a potential illustration of the problem with basing a finding of unfitness solely on the fact that a respondent has at some time in his or her life been convicted of aggravated battery to a child. Apparently, the incident that formed the basis of the aggravated battery conviction occurred when respondent was in an alcohol-induced blackout. In the fall of 2002, respondent successfully completed an inpatient substance-abuse program. The record does indicate that she has used drugs since that time. Nevertheless, if the incident were a result of drug abuse, and if respondent has received treatment sufficient to alleviate concerns regarding the possibility of recurrence of a similar incident, there is no nexus between the aggravated battery conviction and respondent's fitness to be a parent. In no way do we mean to imply that the battery is not relevant to respondent's fitness or even that respondent is not unfit. The point is, given the statutory scheme, we do not know whether she is actually unfit. The trial court was unable to consider the incident in its histori-

cal context with respondent's subsequent rehabilitation, or lack thereof, and make a meaningful determination regarding respondent's fitness. *Cf. Adams v. Adams*, 103 Ill. App. 3d 126, 132-33 (1982) ("In determining fitness a court must look not to the conduct of the parent during any single, isolated period of time but to the conduct of the parent over the entire period of time in question, that is, to the entirety of the parent's conduct").

Of course, due process would be offended if the State attempted to break up a family absent a finding of unfitness. *Quilloin*, 434 U.S. at 255, 54 L. Ed. 2d at 520, 98 S. Ct. at 555. The same would be true if the attempt were based upon a suspect finding of unfitness. A finding may be suspect because the procedures used to produce it were inadequate or because the link between the found facts and the ultimate legal conclusion is itself suspect. In this case, the link between the proxy class and the class of unfit parents is suspect. Being a member of the proxy class does not guarantee that one is also a member of the class of unfit parents. Something more would be required to narrow the proxy class before section 1(D)(q) could pass constitutional muster.

What that "something more" consists of is not difficult to divine. If, for instance, section 1(D)(q) created a rebuttable presumption, as section 1(D)(i) does (see 750 ILCS 50/1(D)(i) (West 2002)), a trial court could hear additional evidence that might exclude an individual from membership in the proxy class. A parent could attempt to rebut the presumption, for example, through evidence of rehabilitation, evidence that the offense occurred under unique circumstances, or the showing of the passage of time during which the parent has led an upstanding life. However, section 1(D)(q) includes no such provisions.

The State points out that a respondent can raise such matters during the best-interests portion of the proceeding. Undoubtedly, the fitness of a parent is a relevant consideration when determining the best interests of a child. *In re D.L.*, 191 Ill. 2d 1, 12 (2000). However, the question here is whether considering such evidence after a parent has been deemed unfit sufficiently narrows the proxy class such that it is narrowly tailored in identifying an unfit parent and terminating his or her parental rights.

Our supreme court considered an analogous question in *H.G.*, 197 Ill. 2d 317. In that case, the supreme court held unconstitutional section 1(D)(m—1) of the Act, under which a parent was presumed unfit if his or her child was in foster care for at least 15 months of a 22-month period (750 ILCS 50/1(D)(m—1) (West 2002)). The parent could rebut the presumption by showing that it was in the child's best interests to be returned to the parent within six months. 750 ILCS 50/

1(D)(m—1) (West 2002). Initially, the supreme court observed that considering the best interests of the child during the fitness hearing would not "sufficiently narrow the scope of the statute." *H.G.*, 197 Ill. 2d at 333-34. It went on to explain that considering the best interests of the child in the context of parental fitness could produce an absurd result:

> "E.W.[, the mother,] established to the circuit court's satisfaction that her child could be safely cared for in her home. However, as of the date of its ruling on the petition to restore custody, the court believed that reunification was not in the child's best interests. Consequently, had the fitness hearing under section 1(D)(m—1) gone forward, E.W. could have been declared unfit *despite* the court's finding that she was able to safely care for her child." (Emphasis in original.) *H.G.*, 197 Ill. 2d at 334-35.

The supreme court concluded that "[b]ecause this error is built into the statute's design, section 1(D)(m—1) cannot be considered narrowly tailored." *H.G.*, 197 Ill. 2d at 335.

Similarly, under the statute at issue in the instant case, a court could credit evidence of a parent's fitness during the best-interests phase of the proceedings and nevertheless terminate the rights of a parent who is fit in fact. This result follows from the fact that more considerations than the fitness of the parent are relevant during the best-interests phase (*In re J.T.C.*, 273 Ill. App. 3d 193, 200 (1995)), and in some cases, those considerations could outweigh evidence demonstrating that the parent is fit (*cf. Stanley v. Illinois*, 405 U.S. 645, 648, 31 L. Ed. 2d 551, 556-57, 92 S. Ct. 1208, 1211 (1972) ("It would be [the father's] burden to establish not only that he would be a suitable parent [to his children] but also that he would be the most suitable of all who might want custody of the children")). It is not hard to conceive of such scenarios. In the normal course of termination proceedings, however, the converse is true; a child's best interests may not result in the severance of the parent-child relationship unless the parent is unfit. *In re Petition of Kirchner*, 164 Ill. 2d 468, 475-76 (1995).

Thus, that evidence of parental fitness may be considered in assessing the child's best interests leaves within the proxy class, for the purpose of termination of parental rights, unfit parents and parents who are fit in fact but have been convicted of one of the offenses listed in section 1(D)(q). Considering such evidence during the best-interests phase does not adequately narrow the proxy class so that it does not offend due process. See *Quilloin*, 434 U.S. at 255, 54 L. Ed. 2d at 520, 98 S. Ct. at 555. Doing so does not make section 1(D)(q) narrowly tailored. *Frisby*, 487 U.S. at 485, 101 L. Ed. 2d at 432, 108 S. Ct. at

2503 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy").

The State also urges us to follow the recent First District decision of *In re D.W.*, 344 Ill. App. 3d 30 (2003), which upheld section 1(D)(q) against an attack virtually identical to that brought by respondent. We respectfully disagree with the First District's analysis. Primarily, we note that the First District applied the wrong standard in assessing whether the statute comported with substantive due process. Although the court began its analysis by stating that the statute was subject to strict scrutiny and was constitutional only if narrowly tailored to promote a compelling interest (*D.W.*, 344 Ill. App. 3d at 47), its analysis of the issue reads as if it utilized the deferential rational-basis standard, under which a statute is required only to bear a rational relationship to the legislature's purpose in enacting the statute (see *In re D.P.*, 319 Ill. App. 3d 554, 557 (2001)). Specifically, the court concluded that section 1(D)(q) survived constitutional attack because "section 1(D)(q) promotes [the State's compelling interest in protecting children] by allowing courts to consider a parent's conviction for the attempted murder of a child when determining whether the parent is also fit to parent his or her other current or future children." *D.W.*, 344 Ill. App. 3d at 49. That the statute promotes a state interest is not enough. Any statute that bears a rational relationship to its goal does so. What is required when a fundamental right is at issue, however, is that the statute promote the State's interest in a way that is narrowly tailored to achieving that end. The First District also supported its conclusion by observing that "[t]he State does not have to wait for another attempted murder to occur." *D.W.*, 344 Ill. App. 3d at 49. We note that this would be the case regardless of whether section 1(D)(q) were phrased as an absolute rule of law or a rebuttable presumption that would allow a parent to present evidence relevant to the issue of fitness. In other words, it is not the least restrictive means to the end of protecting children. When a fundamental right is at issue, such a statute does not satisfy strict scrutiny. *H.G.*, 197 Ill. 2d at 330.

The First District accepted an argument, identical to the one advanced by the State here, that section 1(D)(q) does not offend due process because a parent can present evidence pertaining to fitness during the best-interests phase of the proceedings. *D.W.*, 344 Ill. App. 3d at 49-50. In the course of discussing this issue, the court distinguished *H.G.*, 197 Ill. 2d 317, noting that "unlike the amount of time a child spends in foster care [as set forth in section 1(D)(m—1) of the Act, which was at issue in *H.G.*], it is clear that a parent's conviction for the attempted murder of a child is *directly related* to the

parent's ability to safely care for his or her children and is not due to circumstances beyond the parent's control." (Emphasis added.) *D.W.*, 344 Ill. App. 3d at 50-51. We certainly agree with this observation; however, it does not meaningfully distinguish *H.G.* Ultimately, in *H.G.*, the supreme court held that "[t]he presumption of unfitness set forth in section 1(D)(m—1) is *not narrowly tailored to the compelling goal of identifying unfit parents* because it fails to account for the fact that, in many cases, the length of a child's stay in foster care has nothing to do with the parent's ability or inability to safely care for the child but, instead, is due to circumstances beyond the parent's control." (Emphasis added.) *H.G.*, 197 Ill. 2d at 330-31. Thus, that section 1(D)(q) is related to a parent's fitness does not adequately distinguish *H.G.* Undoubtedly, a conviction of aggravated battery to a child is related to fitness; however, the issue is whether it is sufficiently related to serve as a proxy for unfitness. In other words, the distinction would be meaningful only if section 1(D)(q) was narrowly tailored to promote the State's compelling interest. Again, this portion of the First District's analysis appears to apply the rational-basis standard.

The First District also stated that the absurdity alluded to by the supreme court in *H.G.*, whereby a parent could be found unfit despite the trial court's finding that the parent could adequately care for the child (*H.G.*, 197 Ill. 2d at 335), could not occur under section 1(D)(q). We disagree. In *H.G.*, the problem was caused by the statutory scheme that allowed a parent to introduce evidence of the child's best interests during the unfitness portion of the proceedings. *H.G.*, 197 Ill. 2d at 334-35. Considering evidence of fitness during the best-interests phase could also lead to absurd results. Having found a parent unfit pursuant to the criteria set forth in section 1(D)(q), a trial court could still credit evidence of fitness, essentially determining that the parent was fit in fact, but terminate the parental rights of a fit parent because of the child's best interests. Terminating the parental rights of a parent who is fit in fact is no less absurd than finding a parent unfit despite finding that the parent could adequately care for his or her child.

In short, we decline to follow *D.W.*, 344 Ill. App. 3d 30. It never comes to terms with the question of whether section 1(D)(q) is narrowly tailored. Moreover, we note that the *D.W.* court relied on two cases in which, as it acknowledges, the constitutionality of the relevant statutes was not at issue. *D.W.*, 344 Ill. App. 3d at 49. The one case it relied on that did address substantive due process, *Ray*, 88 Ill. App. 3d at 1013-14, applied the rational-basis standard and mentioned only in passing and without any significant analysis that it would have upheld the statute at issue had it applied heightened scrutiny.

Before concluding our discussion of this issue, one final point

must be addressed. Constitutional challenges come in two types—facial and as applied. Respondent does not specify whether her challenge is the former or the latter. In cases involving a statutory provision like that at issue in the present case, the challenge is necessarily facial. Our supreme court, in *Beverly Bank v. Illinois Department of Transportation*, 144 Ill. 2d 210, 224 (1991), considered the constitutionality of a law that prohibited all construction of new residences in a flood plain and made no allowances for variances or special use permits. The law required the defendant to refuse all such requests and, consequently, was applied in a totally nondiscriminatory manner. Similarly, section 1(D)(q) requires a court to find, without exception, that anyone convicted of a certain offense is unfit to be a parent. The plaintiff in *Beverly Bank* argued that the supreme court should treat its claim as an as-applied challenge. The supreme court rejected the plaintiff's request, explaining:

> "If the court were to review, as plaintiff urges, the constitutionality of section 18g as it applies to a particular piece of property by engaging in an *ad hoc* factual determination, the court would, in effect, be holding the class-wide prohibition on new residential construction unconstitutional on its face for failing to provide for a variance or special use. The court may not judicially create exceptions to this prohibition by engaging in individual factual evaluations with regard to each parcel of land which lies within the floodway in each instance in which a property owner desires to build a house." *Beverly Bank*, 144 Ill. 2d at 224-25.

Similarly, if we were to determine that section 1(D)(q) could not constitutionally be applied to respondent due to countervailing evidence of her fitness, we would, in effect, be treating section 1(D)(q) as if it read that a parent is unfit if "[t]he parent has been criminally convicted of aggravated battery, heinous battery, or attempted murder of any child" unless proved fit through competent evidence. 750 ILCS 50/1(D)(q) (West 2002). As the supreme court made clear in *Beverly Bank*, we may not create such an exception where the legislature has plainly specified otherwise. *Beverly Bank*, 144 Ill. 2d at 224-25; see also *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 372 (1985) ("The creation of classifications is for the judgment of the legislature, and its amending or modifying is not for courts to decide"). Thus, we must treat respondent's challenge as a facial one.

We do not take this to mean, however, that respondent had to prove that there is no set of circumstances under which the statute could be constitutionally applied. Generally "a facial challenge to legislation must establish that *no* set of circumstances exists under which the statute would be valid; the 'overbreadth' doctrine is not

recognized outside the limited context of the first amendment." (Emphasis in original.) *Freed v. Ryan*, 301 Ill. App. 3d 952, 958 (1998). This burden would be too high. Essentially, it would require respondent to prove that no individual is a member of both the proxy class and the class of unfit parents. Even regarding the first amendment (so long as the overbreadth is not substantial), a statute that reaches more conduct than is constitutionally permissible will be dealt with as it is applied on a case-by-case basis. See *Broadrick v. Oklahoma*, 413 U.S. 601, 615-16, 37 L. Ed. 2d 830, 842, 93 S. Ct. 2908, 2917-18 (1973). Thus, typically, such statutes can be cured by excluding from their scope factual situations in which their application would be contrary to due process. In the instant case, however, there is no room for the operation of this principle. Section 1(D)(q), quite plainly, makes irrelevant anything except the fact of a prior conviction of one of the offenses listed in the statute. As a respondent cannot even introduce evidence that would allow the court to find the respondent fit, the statute cannot be cured by excluding fit parents from its reach. Because section 1(D)(q) is not susceptible to being limited in this manner, we cannot consider it as applied, nor can we determine whether its application to respondent was constitutional. Accordingly, we must treat respondent's challenge as facial, and we deem it sufficient that respondent has demonstrated that the statute is structured so that its reach exceeds what is constitutionally permissible. See *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 645-646, 39 L. Ed. 2d 52, 63-64, 94 S. Ct. 791, 799 (1974) ("While the medical experts in these cases differed on many points, they unanimously agreed on one—the ability of any particular pregnant woman to continue at work past any fixed time in her pregnancy is very much an individual matter. Even assuming, *arguendo*, that there are some women who would be physically unable to work past the particular cutoff dates embodied in the challenged rules, it is evident that there are large numbers of teachers who are fully capable of continuing work for longer than the Cleveland and Chesterfield County regulations will allow. Thus, the conclusive presumption embodied in these rules, like that in *Vlandis*, is neither 'necessarily [nor] universally true,' and is violative of the Due Process Clause"); *Stanley*, 405 U.S. at 654-55, 31 L. Ed. 2d at 560-61, 92 S. Ct. at 1214 (holding irrebuttable presumption that unmarried father was unfit violated equal protection clause despite lack of evidence concerning father's actual fitness).

Section 1(D)(q) of the Act is therefore unconstitutional. Our holding is limited to this specific subsection of the Act. Generally, a subsection of a statute is severable unless it is so interconnected with the rest of the statute as to warrant the finding that the legislature

intended the statute to stand as a whole and would not have enacted the remaining portions of the statute independently. *Fiorito v. Jones*, 39 Ill. 2d 531, 540 (1968). Section 1(D)(q) is merely one in a long list of independent bases for finding a parent unfit. 750 ILCS 50/1 (West 2002). Thus, it is severable from the balance of the statute.

Finally, we note that respondent also contests the trial court's order setting adoption as Amanda's permanency goal. See 705 ILCS 405/2—28(2)(D) (West 2002). Because we have determined that respondent's parental rights were not properly terminated, we need not address this issue. The trial court may take appropriate action regarding this issue on remand.

## CONCLUSION

In light of the foregoing, we hold that section 1(D)(q) of the Act is unconstitutional. We reverse the trial court's determination that respondent is an unfit parent, we vacate the subsequent order terminating her parental rights (*In re J.P.*, 261 Ill. App. 3d 165, 174 (1994) ("Parental rights of a nonconsenting parent may be terminated only upon a finding of unfitness")), and we remand this cause. Finally, as the order setting the permanency goal was entered without a proper basis, the trial court should, on remand, vacate the order and conduct a new permanency hearing.

Reversed in part and vacated in part; cause remanded with directions.

McLAREN and CALLUM, JJ., concur.