# Illinois Official Reports

## Appellate Court

---

### *People v. Henderson*, 2013 IL App (1st) 113294

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAQUAN HENDERSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-3294 |
| Filed<br>Rehearing denied | December 17, 2013<br>July 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was convicted of two counts of aggravated unlawful use of a weapon and sentenced to a single term of probation, his conviction for aggravated unlawful use of a weapon under section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code was reversed pursuant to the decision of the Illinois Supreme Court in *Aguilar* holding that statute unconstitutional on its face, but the cause was remanded with directions to impose a sentence on defendant for his conviction for violating section 24-1.6(a)(1), (a)(3)(C) of the Code, based on not having a FOID card, notwithstanding his contentions that subsection (a)(3)(C) is also unconstitutional on its face and is not severable from subsection (a)(3)(A), since subsection (a)(3)(C) was unaffected by the decision in *Aguilar* and remained constitutionally valid as applied to defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-6447; the Hon. Shelley Sutker-Dermer, Judge, presiding. |
| Judgment | Reversed in part and remanded with directions. |

| | |
|---|---|
| Counsel on<br>Appeal | Michael J. Pelletier, Alan D. Goldberg, and Peter Sgro, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Carlos Vera, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.<br>Justices Simon and Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Jaquan Henderson was found guilty of two counts (IV and V) of aggravated unlawful use of a weapon (aggravated UUW) and sentenced to a single term of 18 months' probation. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of aggravated UUW where the State failed to present any evidence that he was not an invitee at 1422 North Lotus Avenue, where his father lived. He also contends that the aggravated UUW statute, section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1961 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)), which criminalizes the possession of a loaded firearm when outside one's home, violates both federal and state guarantees of the individual right to bear arms for self-defense outside the home, and thus the statute is unconstitutional and renders his conviction void.

¶ 2                          BACKGROUND

¶ 3    The record shows that defendant was charged by information with six counts of aggravated UUW stemming from an incident on April 12, 2011. The trial court found defendant guilty of counts IV and V, and not guilty of the remaining counts. The sentencing order entered by the trial court reflects a single term of 18 months' probation with specific reference to only count IV, wherein the State alleged that "the firearm possessed was uncased, loaded and immediately accessible at the time of the offense, in violation of section 24-1.6(a)(1)/(3)(A) of the Illinois Compiled Statutes 1992 as amended." The trial court did not impose sentence on count V (aggravated UUW), wherein the State alleged that defendant was in possession of a firearm and "had not been issued a currently valid firearm owner's identification card, in violation of section 24-1.6(a)(2)/(3)(C) of the Illinois Compiled Statutes 1992 as amended."

¶ 4    At trial, Chicago police officer Anthony Jannotta testified that at 4 p.m. on April 12, 2011, he and his partner, Officer Eric Seng, were on routine patrol in the 1400 block of North Lotus Avenue, wearing plain clothes and driving an unmarked car. He described the area as

residential, with high gang and drug activity, consisting primarily of single-family homes separated by gangways leading to backyards and garages.

¶ 5 Officer Jannotta testified that he observed a group of approximately 20 to 30 male teenagers on the west side of North Lotus Avenue, a one-way southbound street, by the grassy area between the sidewalk and the curb. His attention was drawn to defendant, whom he identified in court, standing on the sidewalk. From the front passenger seat of the unmarked patrol car, Officer Jannotta saw defendant grab his waistband and begin walking away. Defendant picked up his pace as Officer Jannotta and his partner caught up to him in their unmarked car. When Officer Jannotta asked him to "hold up," defendant looked in the officer's direction and ran southwest into the gangway of 1422 North Lotus Avenue. At that time, Officer Jannotta announced his office and chased defendant on foot, briefly losing sight of him as he turned into the backyard of 1422 North Lotus Avenue. Officer Jannotta testified that he then observed defendant remove a bluesteel handgun from his right pants pocket and throw it into the backyard of the adjacent residence at 1424 North Lotus Avenue. Officer Jannotta handcuffed defendant and recovered the loaded .380-caliber handgun, which his partner subsequently inventoried.

¶ 6 Officer Jannotta further testified that he advised defendant of his *Miranda* rights at the police station and defendant agreed to speak with him. Defendant stated that he had just found the handgun and kept it for protection because "he was into it with [the Traveling] Vice Lords." Officer Jannotta asked defendant if he had a firearm owner's identification (FOID) card, and defendant replied that he did not. During processing, defendant gave his home address as 1310 North Lorel Avenue in Chicago.

¶ 7 On cross-examination, Officer Jannotta acknowledged that he did not observe defendant with a handgun when he was standing on the sidewalk, but when defendant was in the backyard of 1422 North Lotus Avenue, throwing it over the fence. Over the State's objection, Officer Jannotta further testified that following defendant's arrest, he had a discussion with an individual who came outside of the house at 1422 North Lotus Avenue and whom Officer Jannotta believed was defendant's father or stepfather. Thereafter, the State rested its case-in-chief, and the defense rested without presenting any evidence.

¶ 8 During closing arguments, defense counsel argued, *inter alia*, that the State failed to meet its burden of disproving defendant's connection to 1422 North Lotus Avenue. Defense counsel argued that defendant was on the sidewalk in front of that address, and never on the public street, as alleged in the information. The State contended that defendant possessed the handgun when he was with a group of people on the parkway and on the sidewalk at that location. The trial court found defendant guilty of two counts of aggravated UUW based on the credible testimony of Officer Jannotta. Defendant was subsequently sentenced to 18 months' probation. Defendant timely filed this appeal pursuant to Illinois Supreme Court Rules 604(b) and 606 (eff. Feb. 6, 2013).

¶ 9                                          ANALYSIS

¶ 10 In this court, defendant contends that he was not proved guilty of aggravated UUW beyond a reasonable doubt and that the aggravated UUW statute, which criminalizes the possession of a loaded firearm when outside one's home, violates both federal and state guarantees of the individual right to bear arms for self-defense outside the home. He thus maintains that the statute is unconstitutional and renders his conviction void.

¶ 11     We are mindful that nonconstitutional issues should be considered first and constitutional issues considered only if necessary to the resolution of this case. *Coram v. State*, 2013 IL 113867, ¶ 56. However, after the parties filed their briefs in this appeal, the Illinois Supreme Court issued its opinion in *People v. Aguilar*, 2013 IL 112116 (petition for rehearing pending), which squarely resolves the constitutional issue presented here and disposes of one of the issues in this case. See *People v. Jamesson*, 329 Ill. App. 3d 446, 451-52 (2002) (first addressing the constitutionality of the statute because, in the event that the statute is declared facially unconstitutional, the ultimate outcome would be to vacate defendant's conviction based upon that statute). In addition, defendant's acknowledged failure to challenge the aggravated UUW statute in the trial court does not preclude our review of the issue because a challenge to the constitutionality of a criminal statute may be raised at any time and is subject to *de novo* review. *People v. Coleman*, 409 Ill. App. 3d 869, 877 (2011).

¶ 12     In *People v. Aguilar*, 2013 IL 112116, ¶ 22, the supreme court held, as did the United States Court of Appeals for the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), that on its face, section 24-1.6(a)(1), (a)(3)(A) violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution. In so holding, the supreme court observed that several panels of the appellate court have considered the constitutionality of section 24-1.6(a)(1), (a)(3)(A) and uniformly held that it passes constitutional muster because it "prohibits only the possession of operable handguns *outside the home*." (Emphasis in original.) *Aguilar*, 2013 IL 112116, ¶ 18 (and cases cited therein). However, the supreme court found persuasive the analysis set forth in *Moore*, which noted that the second amendment guarantees not only the right to "keep" arms, but also the right to "bear" them, and that these rights are not the same, and the conclusion in *Moore* that " '[t]he Supreme Court has decided that the [second] amendment confers a right to bear arms for self-defense, which is as important outside the home as inside.' " *Aguilar*, 2013 IL 112116, ¶¶ 19-20 (quoting *Moore*, 702 F.3d at 942). In light of that holding, the State concedes on appeal that defendant's conviction under section 24-1.6(a)(1), (a)(3)(A) cannot stand and we reverse it.

¶ 13     That, however, does not end our inquiry. We note that the trial court also found defendant guilty of aggravated UUW as alleged in count V based on his possession of a firearm without a valid FOID card, under section 24-1.6(a)(2), (a)(3)(C). This section was unaffected by *Aguilar*, and, as noted, the trial court did not impose a sentence on defendant's conviction thereon. Under these circumstances, we have the authority to remand the cause for sentencing on that conviction (count V) pursuant to Illinois Supreme Court Rule 615(b)(2), which provides that on appeal the reviewing court may "set aside, affirm, or modify any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." As our supreme court explained in *People v. Dixon*, 91 Ill. 2d 346, 353-54 (1982):

    "Since the appeal was properly before the appellate court with regard to defendant's convictions for armed violence and aggravated battery, and the failure to impose sentences upon the two unappealed convictions had been intimately related to and 'dependent upon' the appealed convictions within the meaning of Rule 615(b)(2), we believe that court was authorized to remand the cause for imposition of sentence. Any other interpretation of the rule could have mischievous consequences."

- 4 -

¶ 14    On October 17, 2013, this court on its own motion, ordered the parties to file supplemental briefs addressing "the applicability of *People v. Aguilar*, 2013 IL 112116 to this case" and "explain whether count 5, based on failure to possess an F.O.I.D. card, should be affirmed, remanded for resentencing, or reversed." Following supplemental briefing, oral arguments were heard before this court on October 29, 2013. We now turn to the merits of the parties' contentions.

¶ 15    The State acknowledges that in light of *Aguilar*, defendant's aggravated UUW conviction on count IV cannot stand, but contends that his aggravated UUW conviction on count V should be affirmed and remanded for sentencing because that provision of the statute remains constitutionally valid. Specifically, the State asserts that under subsection (a)(3)(C) of the aggravated UUW statute, the FOID requirement is a reasonable restriction on the right to keep and bear arms under the second amendment and, therefore, is constitutional in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742, 130 S. Ct. 3020 (2010), and *People v. Aguilar*, 2013 IL 112116, because it does not regulate any conduct that has been held to be protected by the second amendment.

¶ 16    Defendant acknowledges that *Aguilar* addressed only the constitutionality of section 24-1.6(a)(1), (a)(3)(A), but contends that his aggravated UUW conviction on count V, under subsection (a)(3)(C), must be reversed because that subsection "is not severable from the sections struck in *Moore* and *Aguilar* and is, therefore, unconstitutional." Relatedly, he contends that the FOID card requirement in subsection (a)(3)(C) is facially unconstitutional. We review *de novo* these purely legal arguments. *People v. Clemons*, 2012 IL 107821, ¶ 8.

¶ 17    In considering the effect of the supreme court's holding in *Aguilar*, that section 24-1.6(a)(1), (a)(3)(A) is facially unconstitutional, on the balance of the aggravated UUW statute, we presume that the legislature intended to enact a statute that was consistent with our constitution, and, accordingly, we give effect to as much of the statute as is possible. *People v. Warren*, 173 Ill. 2d 348, 371 (1996). The issue of severability essentially involves a question of statutory construction, of " 'ascertaining and giving effect to the intent of the legislature.' " *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 534 (1990) (quoting *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221, 237 (1986)). " 'The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning.' " *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 76 (2004) (quoting *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997)). "If the legislative intent can be discerned from the statutory language, this intent must prevail, and no resort to other tools of statutory construction is necessary." *Mattis*, 212 Ill. 2d at 76.

¶ 18    Generally, an invalid portion of a statute may be severed from those portions which remain valid, and the authority to do so may arise either from a specific severability provision of that statute or from the general severability statute (see 5 ILCS 70/1.31 (West 2012)). *Warren*, 173 Ill. 2d at 371. Because Public Act 91-690 (eff. Apr. 13, 2000) (adding 720 ILCS 5/24-1.6), which added the offense of aggravated UUW to the Criminal Code of 1961, did not contain its own specific severability provision, we look to the Statute on Statutes' general severability provision (*People v. Alexander*, 204 Ill. 2d 472, 484 (2003)):

> "If any provision of an Act enacted after the effective date of this amendatory Act or application thereof to any person or circumstance is held invalid, such invalidity does not affect other provisions or applications of the Act which can be given effect

without the invalid application or provision, and to this end the provisions of each Act enacted after the effective date of this amendatory Act are severable, unless otherwise provided by the Act." 5 ILCS 70/1.31 (West 2012).

¶ 19 Severability is determined through a two-part inquiry: first, we determine "whether the valid and invalid portions of the statute are essentially and inseparably connected in substance," and second, we determine whether the legislature would have enacted the valid portions without the invalid portions. *Alexander*, 204 Ill. 2d at 484 (citing *Fiorito v. Jones*, 39 Ill. 2d 531, 540 (1968)); accord *In re Amanda D.*, 349 Ill. App. 3d 941, 954-55 (2004) ("Generally, a subsection of a statute is severable unless it is so interconnected with the rest of the statute as to warrant the finding that the legislature intended the statute to stand as a whole and would not have enacted the remaining portions of the statute independently.").

¶ 20 At the time of defendant's convictions, the aggravated UUW statute provided in pertinent part:

"(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or
***
(C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(A), (a)(3)(C) (West 2010).

¶ 21 Subsection (a) plainly sets forth the elements of the offense of aggravated UUW. *People v. Zimmerman*, 239 Ill. 2d 491, 499 (2010). To convict a defendant of aggravated UUW, the State must prove beyond a reasonable doubt the elements set forth in subsection (a)(1) or (a)(2), and one of the nine factors in subsection (a)(3). 720 ILCS 5/24-1.6(a)(1) to (a)(3) (West 2010); *Zimmerman*, 239 Ill. 2d at 499. Subsection (a)(3) lists the nine factors that "transform" the offense of unlawful use of a weapon to aggravated UUW, and the absence of proof of at least one of these factors will not support a conviction for aggravated UUW. *Zimmerman*, 239 Ill. 2d at 499-500. In contrast, subsection (d), entitled "Sentence," provides the felony classification of the offense and lists several factors that increase a defendant's sentence from a Class 4 felony to a higher level classification. *Zimmerman*, 239 Ill. 2d at 500.

¶ 22    From our reading of the aggravated UUW statute as a whole (*e.g.*, *People v. Lloyd*, 2013 IL 113510, ¶ 25), we find that the invalidity of subsection (a)(3)(A) by *Aguilar* is not fatal to the balance of the statute, particularly the FOID card requirement in subsection (a)(3)(C), which forms the basis for defendant's conviction on count V. Although *Aguilar* did not expressly pass on the issue of whether subsection (a)(3)(A) is severable from the balance of the statute, we are mindful of our obligation to uphold legislative enactments whenever reasonably possible, and we believe that subsections (a)(1), (a)(2), and the remaining factors in subsection (a)(3) can stand independently of subsection (a)(3)(A), which is only one of several factors that operate in conjunction with subsection (a)(1) or (a)(2) to comprise the substantive offense. *People v. Sanders*, 182 Ill. 2d 524, 534 (1998). Because the removal of one factor (subsection (a)(3)(A)) by application of *Aguilar* "undermines neither the completeness nor the executability of the remaining subsections" (*Sanders*, 182 Ill. 2d at 534), we cannot conclude that it is "so intertwined with the rest of the statute that the legislature intended the statute to stand or fall as a whole" (*People v. Singmouangthong*, 334 Ill. App. 3d 542, 547 (2002)). *Tully v. Edgar*, 171 Ill. 2d 297, 313 (1996).

¶ 23    Our determination of severability is not based on whether we believe that the aggravated UUW statute is good law, absent the invalid provision, but on whether the remaining provisions would reflect the intent of the legislature as our plain reading of the entire statute confirms. *State Board of Elections*, 136 Ill. 2d at 534. Defendant's reliance on *Moore*, 702 F.3d 933, does not persuade us to conclude otherwise, particularly where his arguments regarding severability focus on whether the *other* subsections of the aggravated UUW statute are good law and the absence of "evidence that the legislature intended for the other subsections to be severable." Accordingly, while we agree with defendant that *Moore* also considered subsection (a)(4) of the unlawful use of weapons statute (720 ILCS 5/24-1(a)(4) (West 2010)), which was not at issue in *Aguilar*, we are simply unpersuaded by his reasoning that "the language in (a)(1) and (2) of the [aggravated UUW] statute is nearly identical to the language in the UUW statute stricken in *Moore*" and "[a]n enhanced version of an unconstitutional statute is essentially and inseparably connected in substance and cannot be severed." *Moore*, like *Aguilar*, did not expressly pass on the issue of whether the unconstitutional provision, subsection (a)(3)(A) of the aggravated UUW statute, is severable from the balance of the statute. See, *e.g.*, *Singmouangthong*, 334 Ill. App. 3d at 545 (noting authority cited by defendant did not expressly pass on the issue of severability).

¶ 24    Notwithstanding, as discussed above, *Aguilar* echoed the reasoning of *Moore* in holding that, on its face, subsection (a)(3)(A) of the aggravated UUW statute violates the second amendment right to keep and bear arms by categorically prohibiting the possession and use of an operable firearm for self defense outside the home. However, *Aguilar* made clear, "we are in no way saying that such a right is unlimited or is not subject to meaningful regulation" (*Aguilar*, 2013 IL 112116, ¶ 21), then remanded the cause to the trial court for imposition of a sentence on the defendant's unlawful possession of a firearm conviction, after rejecting his second amendment challenge to the underlying statute (720 ILCS 5/24-3.1(a)(1) (West 2008)). *Aguilar*, 2013 IL 112116, ¶¶ 21-22, 25-26, 30. We add that, in rejecting defendant's argument that section 24-3.1(a)(1) (unlawful possession of a firearm by a person under 18 years of age) violated his second amendment right to keep and bear arms for self-defense, the supreme court in *Aguilar*, 2013 IL 112116, ¶ 26, cited the emphasis by the United States Supreme Court in *Heller*, 554 U.S. at 626-27, that "nothing in our opinion should be taken to

cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Moore* also recognized this limitation and further suggested that the Illinois legislature could "sensibly require that an applicant for a handgun permit establish his competence in handling firearms. A person who carries a gun in public but is not well trained in the use of firearms is a menace to himself and others." *Moore*, 702 F.3d at 941.

¶ 25 Defendant concedes that "reasonable regulations on this right can withstand constitutional muster," but maintains "it is not clear that the legislature would have punished the exercising of this right without a FOID card so severely had it known the underlying behavior was constitutionally protected." He correctly cites *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 462 (1997), for the proposition that an entire act will be declared unconstitutional, even in cases where the valid sections of an act are complete and capable of being executed, if after striking the invalid provisions, the act that remains does not reflect the legislative purpose in enacting the legislation.

¶ 26 " 'Statutes are construed as they were intended to be construed when they were passed,' " and "[t]hus, the legislative intent that controls the construction of a public act is the intent of the legislature which passed the subject act, and not the intent of the legislature which amends the act." *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 441 (2008) (quoting *People v. Boreman*, 401 Ill. 566, 572 (1948)). This court has found the purpose of the UUW statute and the aggravated UUW statue to be the same, " '*i.e.*, the protection of the police and the public from dangerous weapons' " (*People v. Austin*, 349 Ill. App. 3d 766, 774 (2004) (quoting *People v. Pulley*, 345 Ill. App. 3d 916, 924 (2004))), and we read the balance of the aggravated UUW statute as a continuing reflection of that purpose. In light of our determination that the removal of subsection (a)(3)(A) by application of *Aguilar* "undermines neither the completeness nor the executability of the remaining subsections" (*Sanders*, 182 Ill. 2d at 534), and the Seventh Circuit's recognition in *Moore* that the Illinois legislature could implement sensible requirements for the public carriage of handguns without running afoul of the second amendment (*Moore*, 702 F.3d at 941), we cannot accept defendant's assertion against severability, that "it cannot be inferred that the legislature would have passed 720 ILCS 5/24-1.6(a)(1)(3)(c) if it had known that the *core* conduct was constitutionally protected." (Emphasis added.) This brings us to defendant's related contention.

¶ 27 Defendant contends that subsection (a)(3)(C) of the aggravated UUW statute is facially unconstitutional because the relevant section of the FOID statute (430 ILCS 65/4(a)(2)(i) (West 2010)) "completely bars all persons under 21 years old from firearm ownership without parental permission without any individualized determination of dangerousness, and because persons under 21 have a Second Amendment right to armed self-defense," as described in his first contention.

¶ 28 Where, as here, two statutes relate to the same subject, we presume that the legislature intended them to be harmonious and will " 'construe them with reference to each other, so as to give effect to all of the provisions of each if possible.' " *People v. Holmes*, 241 Ill. 2d 509, 525 (2011) (Garman, J., specially concurring) (quoting *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 218 (2008)). However, it is the burden of the party who challenges the constitutionality of a statute to rebut the presumption of its

constitutionality by "clearly establishing its constitutional infirmity." *Sanders*, 182 Ill. 2d at 528-29. Defendant fails to meet his burden in this case.

¶ 29    In analyzing second amendment claims, we utilize the two-part approach adopted by our supreme court in *Wilson v. County of Cook*, 2012 IL 112026, ¶¶ 41-42:

"The threshold question we must consider is whether the challenged law imposes a burden on conduct falling within the scope of the second amendment guarantee. That inquiry involves a textual and historical inquiry to determine whether the conduct was understood to be within the scope of the right at the time of ratification. [Citation.] If the government can establish that the challenged law regulates activity falling outside the scope of the second amendment right, then the regulated activity is categorically unprotected. [Citation.]

However, 'if the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected–then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.' *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)." *People v. Alvarado*, 2011 IL App (1st) 082957, ¶ 63.

¶ 30    In *People v. Alvarado*, 2011 IL App (1st) 082957, ¶¶ 64-72, this court found that the regulated conduct at issue, *i.e.*, "possession in public of a handgun by an 18-to-20-year-old adult who may be a law-abiding citizen carrying the handgun for the purpose of self-defense–is not at the core of the right to bear arms like the defense of hearth and home," and passes intermediate scrutiny. Accord *People v. Garvin*, 2013 IL App (1st) 113095, ¶ 35 (strict scrutiny applies to "core" second amendment protections, whereas intermediate scrutiny applies to regulation that is "closer to the margins"). We acknowledge that both *Alvarado* and *Garvin* were decided before *Aguilar*. However, in *Aguilar*, the supreme court expressly agreed with the "obvious and undeniable" conclusion of those courts, since *Heller*, which have undertaken a comprehensive historical examination of "presumptively lawful regulatory measures," *e.g.*, laws proscribing the carriage of firearms in sensitive places such as schools and government buildings, and cited with approval several cases, all of which concluded that the possession of handguns by minors is conduct that falls outside the second amendment's core protection. *Aguilar*, 2013 IL 112116, ¶¶ 26-27 (citing *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 204 (5th Cir. 2012) (concluding that "[m]odern restrictions on the ability of persons under 21 to purchase handguns–and the ability of persons under 18 to possess handguns–seem, to us, to be firmly historically rooted"), *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009) (concluding that the "right to keep arms in the founding period did not extend to juveniles"), and *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387-90 (D. Mass. 2013) (holding that a Massachusetts law proscribing the carry of firearms by persons under the age of 21 "comports with the Second Amendment and imposes no burden on" the right to keep and bear arms)). We thus reject defendant's contention that the public carriage of handguns by those under 21 is core conduct subject to second amendment protection.

¶ 31    As for defendant's claim that the FOID card requirement "completely bars all persons under 21 years old from firearm ownership without parental permission without any individualized determination of dangerousness," and is therefore unconstitutional on its face, we observe the statements of our supreme court in *Coram*, 2013 IL 113867. In *Coram*, our supreme court considered whether sections of the Firearm Owners Identification Card Act

(FOID Card Act) (430 ILCS 65/10 (West 2010)) precluded an applicant for a FOID card from being granted one where the applicant had a prior conviction for domestic battery. The lead opinion by three justices held:

> "We believe the applicable state and federal statutory schemes can be interpreted in a manner consistent with congressional intent and in such a way as to afford Coram his firearm rights under the Illinois Constitution (Ill. Const. 1970, art. I, § 22) and the second amendment to the United States Constitution (U.S. Const., amend. II)." *Coram*, 2013 IL 113867, ¶ 3.

¶ 32    The three-justice lead opinion concluded:

> "Both the Illinois Constitution and the United States Constitution safeguard the respective state and federal rights to keep and bear arms. Article I, section 22, of the Illinois Constitution provides: 'Subject only to the police power, the right *of the individual citizen* to keep and bear arms shall not be infringed.' (Emphasis added.) Ill. Const. 1970, art. I, § 22. The second amendment of the United States Constitution provides: 'A well regulated Militia, being necessary to the security of a free State, the right *of the people* to keep and bear Arms, shall not be infringed.' (Emphasis added.) U.S. Const., amend. II. The language of the Illinois Constitution suggests that the right, or 'rights,' of Illinois citizens to keep and bear arms are not generic or categorical, that Illinois secures to its citizens, via the Illinois Constitution and implementing laws, *individualized* consideration of a person's right to keep and bear arms. That policy is reflected in the provisions of Illinois' FOID Card Act (see 430 ILCS 65/5, 8, 10 (West 2010)), which mandates individual assessment of a person's application and circumstances by the *Department of State Police* in the first instance, and individualized *judicial* consideration of the basis for denial of a FOID card–without which firearm possession is illegal under state law–and judicial relief from that denial in appropriate circumstances." (Emphases in original.) *Coram*, 2013 IL 113867, ¶ 58.

¶ 33    Both the special concurrence by Justices Burke and Freeman and the dissent by Justices Theis and Garman discussed how the FOID Card Act applied to the facts of the case. All of them held that the FOID Card Act applied and none questioned its constitutionality. The *Coram* decision was issued on September 12, 2013, the same day as the decision in *People v. Aguilar*, 2013 IL 112116. Consequently, the *Coram* decision strongly supports our holding that the FOID Card Act remains constitutional as applied to defendant.

¶ 34    We also reject defendant's argument that the recent passage of legislation, effective July 9, 2013, allowing Illinois residents to obtain concealed handgun permits that will allow public carriage of handguns supports his position "that the prior version of the [aggravated UUW] statute is unconstitutional in its entirety." Pursuant to the dictates of the Seventh Circuit in *Moore v. Madigan*, 702 F.3d at 942, the Illinois legislature passed the Firearm Concealed Carry Act, which amended, *inter alia*, the aggravated UUW statute to allow for a limited right to carry an operable handgun in public (see Pub. Act 98-0063 (eff. July 9, 2013)). In doing so, the legislature did not repeal the version of the aggravated UUW statute challenged by defendant. Indeed, despite numerous amendments since its original enactment in 1967, section 13 of the FOID Card Act has consistently provided, "Nothing in this Act shall make lawful the acquisition or possession of firearms or firearm ammunition which is otherwise prohibited by law." See 430 ILCS 65/13 (West 2010); *Coram*, 2013 IL 113867,

¶ 116 (Theis, J., dissenting, joined by Garman, J.). As the supreme court did in *Coram*, 2013 IL 113867, ¶ 75, we note, in passing, that the recent amendment of section 10 of the FOID Card Act pursuant to Public Act 97-1150, § 545, effective January 25, 2013, provides that a circuit court may not order the issuance of a FOID card if the applicant is otherwise prohibited from possessing or using a firearm under federal law, and that relief can be granted only if doing so would not be contrary to federal law. Pub. Act 97-1150, § 545 (eff. Jan. 25, 2013) (amending 430 ILCS 65/10(b), (c)(4)).

¶ 35       Further, the Firearm Concealed Carry Act imposes many more restrictions upon Illinois residents seeking to obtain permits allowing them to carry firearms. According to the Illinois State Police website (https://ccl4illinois.com/ccw/Public/ISPFaq.aspx),[1] applicants for an Illinois concealed carry license must: be at least 21 years of age; have a valid FOID card (if an Illinois resident); have not been convicted or found guilty, within the last five years, in Illinois or any other state of a misdemeanor involving the use or threat of physical force against another, or two or more violations related to alcohol or drugs; not be the subject of a pending arrest warrant, prosecution, or other proceeding that could lead to disqualification; not have been in residential or court-ordered alcohol or drug treatment within the last five years; submit a completed Concealed Carry License application; and successfully complete 16 hours of firearms training. Also, in *Shepard v. Madigan*, 734 F.3d 748, 751-52 (7th Cir. 2013), the Seventh Circuit recently rejected a constitutional challenge to the concealed carry law, holding that a licensed handgun owner's challenge to the 270-day delay in implementing the new legislation could not be resolved in a challenge to old firearms legislation. For the foregoing reasons, defendant has failed to meet his burden to rebut the presumption that the FOID card requirement in subsection (a)(3)(C) of the aggravated UUW statute is constitutionally sound. *Garvin*, 2013 IL App (1st) 113095, ¶ 39.

¶ 36       Because the trial court also found defendant guilty on count V, under section 24-1.6(a)(2), (a)(3)(C), which is unaffected by *Aguilar*, and defendant acknowledged that he did not have a FOID card on his person at the time of the offense (*People v. Williams*, 266 Ill. App. 3d 752, 759-60 (1994)), we remand the cause to the trial court for imposition of sentence on that count.

¶ 37       Reversed in part and remanded with directions.

---

[1]We may take judicial notice of state rules and regulations (*People v. Olsen*, 388 Ill. App. 3d 704, 716 (2009)), which appear on a public government website (*People v. McCurry*, 2011 IL App (1st) 093411, ¶ 9 n.1).